UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Telescope Media Group, a Minnesota corporation, Carl Larsen and Angel Larsen, the founders and owners of Telescope Media Group, | Civ. No. 16-CV-04094 (JRT-LIB) |
| Plaintiffs, | |
| v. | |
| Kevin Lindsey, in his official capacity as Commissioner of the Minnesota Department of Human Rights and Lori Swanson, in her official capacity as Attorney General of Minnesota, | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| Defendants. | |

## INTRODUCTION

Plaintiff Telescope Media Group, and its owners Angel and Carl Larsen, ("Plaintiffs") bring various claims under the First Amendment and Fourteenth Amendment of the United States Constitution. Plaintiffs state that they wish to begin selling wedding videography someday in the future, but want to deny their services to same-sex couples. Plaintiffs allege the Minnesota Human Rights Act ("MHRA"), which prohibits businesses offering public services or public accommodations from discriminating on the basis of sexual orientation, is unconstitutional as applied to them. Plaintiffs seek an injunction prohibiting Defendants from enforcing the MHRA against

them if Plaintiffs start selling wedding videography services to opposite-sex couples in the future.

Defendants respectfully request the Court dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice because: (1) Plaintiffs claims are not ripe and Plaintiffs otherwise lack standing; (2) as against the Attorney General, the Court lacks jurisdiction to award an injunction; and (3) Plaintiffs' First and Fourteenth Amendment claims fail as a matter of law.

## BACKGROUND

Defendants incorporate by reference the background section included in their Memorandum In Opposition to Plaintiffs' Motion for Preliminary Injunction. Defs.' Mem. In Opp. to P.I. at 2-5. As is more fully laid out therein, the Minnesota Legislature first passed the MHRA in 1885. *Id.* at 2. It seeks to "eliminat[e] discrimination and assur[e] citizens equal access to publicly available goods and services." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984).

In 1991, the Governor's Task Force on Gay and Lesbian Minnesotans found "substantial societal hostility to homosexuality" and concluded that it was "damaging to gay men and lesbians and . . . to society as a whole." Report of the Governor's Task Force on Lesbian and Gay Minnesotans 1 (1991), attached to the Affidavit of Janine Kimble as Ex. 2, at 3. The Task Force recommended adding sexual orientation as a protected status under the MHRA, explaining that:

> Out of several hundred recommendations received by this Task Force at
> public hearings and briefings, an underlying theme was the need to add
> gays and lesbians as a protected class under the Minnesota Human Rights

2

Act. . . . [T]he overwhelming body of testimony from gays, lesbians and heterosexuals indicates that, as a group, gays and lesbians are the targets of considerable discrimination in the State of Minnesota. . . .

*Id.* at 5-6.

In 1993, Minnesota Legislature amended the MHRA to prohibit discrimination on the basis of sexual orientation. Act of April 2, 1993, ch. 22, § 10, 1993 Minn. Laws 131-32. The current version of the law declares that:

Such discrimination threatens the rights and privileges of the inhabitants of this state and menaces the institutions and foundations of democracy. It is also the public policy of this state to protect all persons from wholly unfounded charges of discrimination. Nothing in this chapter shall be interpreted as restricting the implementation of positive action programs to combat discrimination.

Minn. Stat. § 363A.02, subd. 1(b).

Plaintiffs challenge two statutory provisions, Minnesota Statutes Sections 363A.11, subd. 1(a)(1) , and 363A.17(3). Section 363A.11, subd. 1(a)(1) provides that it is an unfair discriminatory practice:

to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race, color, creed, religion, disability, national origin, marital status, sexual orientation, or sex, or for a taxicab company to discriminate in the access to, full utilization of, or benefit from service because of a person's disability[.]

Section 363A.17 provides that:

It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service:

(3) to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of a person's race, national

3

origin, color, sex, sexual orientation, or disability, unless the alleged refusal or discrimination is because of a legitimate business purpose.

## STANDARD OF REVIEW

On a motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleading in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). However, the Court is not bound to accept as true legal conclusions nor mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* (citation and quotation marks omitted).

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE.

#### A.   Plaintiffs' Claims Are Premature And Not Ripe.

"In order to invoke the jurisdiction of the federal courts, the parties must demonstrate an actual, ongoing case or controversy within the meaning of Article III of the Constitution." *Iron Cloud v. Sullivan*, 984 F.2d 241, 242 (8th Cir. 1993) (internal quotation marks omitted). To establish standing, a plaintiff must demonstrate three

4

minimal constitutional requirements: (1) an "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is "fairly traceable" to the challenged action; and (3) that it is likely that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992). "[A]n actual controversy must be extant at all stages of review," including when the complaint is filed. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (internal quotation marks omitted).

Claims also must be ripe. The ripeness doctrine "flows from both the Article III 'cases' and 'controversies' limitation and also from prudential consideration for refusing to exercise jurisdiction." *Iowa League of Cities v. Envtl. Prot. Agency*, 711 F.3d 844, 867 (8th Cir. 2013) (citation and quotation marks omitted). A case is not ripe if it rests on "contingent future events that may not occur as anticipated." *Minn. Pub. Utils. Comm'n v. F.C.C.*, 483 F.3d 570, 582 (8th Cir. 2007) (citation and quotation marks omitted). The ripeness inquiry requires an examination into "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 300-01 (1998) (citation and quotation marks omitted). Plaintiffs have the burden of proving ripeness, by a preponderance of the evidence. *See Iowa League of Cities*, 711 F.3d at 870.

First, Plaintiffs cannot show a concrete non-hypothetical injury nor fitness of the issue for judicial decision. The fitness of the issues for judicial decision focuses on "a court's ability to visit an issue . . . [and] whether it would benefit from further factual

development." *Pub. Water Supply Dist. No. 10 v. City of Peculiar, Mo.*, 345 F.3d 570, 573 (8th Cir. 2003). A claim lacks standing and is not ripe when there is uncertainty regarding how an implementing authority would apply a statute in particular circumstances. *Texas*, 523 U.S. at 301 (challenge not ripe because "determination of the scope . . . of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function" (citation and quotation marks omitted)). Subjective concern about how a law might apply does not establish an injury-in-fact fairly traceable to the actions of Defendants. *See Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 984 (8th Cir. 2009) (stating that pre-enforcement challenge to a statute requires that the impact of the law be direct and immediate and there exists "an actual, well-founded fear that the law will be enforced against them").

Here, Plaintiffs allege they seek to decline to create wedding videos for same-sex marriage ceremonies, and seek relief based on a number of assumptions, all of which are speculative: (a) Plaintiffs begin to offer wedding video services to the public; (b) a same-sex couple seeks to hire Plaintiffs for their marriage ceremony; (c) Plaintiffs have capacity but refuse to provide their video services to the couple because of the couple's sexual orientation; and (d) the MHRA is enforced against Plaintiffs. These "[a]ssertions of potential future injury do not satisfy the injury-in-fact test." *Sierra Club v. Robertson*, 28 F.3d 753, 758 (8th Cir. 1994).

Plaintiffs also must show the hardship of withholding judicial consideration. *Pub. Water*, 345 F.3d at 572-73. Allegations of abstract or speculative injury do not satisfy

6

the hardship prong; instead, Plaintiffs must be "immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Id.* at 573. Here, Plaintiffs have not shown they are in danger of suffering direct injury.   As indicated *infra* at 8-15, Plaintiffs' provision of business services does not implicate protected First Amendment expression.   Nor can Plaintiffs' identify standing to bring their Fourteenth Amendment claims as a pre-enforcement challenge.[1]

###### B.    The Attorney General Is Not A Proper Party Under The Eleventh Amendment.

As more fully set forth in Defendants' Memorandum in Opposition to the Preliminary Injunction at 24-26, Attorney General Swanson is not a proper party to this case under the Eleventh Amendment and *Ex parte Young*, 209 U.S. 123 (1908).  *See 281 Care Comm. v. Arneson*, 638 F.3d 621 (8th Cir. 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)); *Minn. Citizens Concerned for Life, Inc., v. Swanson*, Civ. No. 10-2938, 2011 WL 797462, at *3 (D. Minn. Mar. 1, 2011) (citations and quotations omitted).

Plaintiffs allege only that the Attorney General acts as the attorney for the Minnesota Department of Human Rights.   Am. Comp. ¶ 29; *see also* Minn. Stat. § 363A.32, subd. 1 (providing only that the attorney general is the "attorney for the

---

[1] Plaintiffs currently run a videography business and plead that the business is sufficiently busy that Plaintiffs are required to turn down paying clients.  Am. Compl. [Doc. 13] ¶ 98.  As such, this is not a case where a party would have to expend money to comply with the law. *See Gray*, 567 F.3d at 986.  Indeed, Plaintiffs plead no economic injury—speculative or otherwise.

department" and that matters may be referred "after a finding of probable cause" by the Commissioner).

The Eleventh Amendment does not permit an injunction against the Attorney General because a state agency might in the future ask for representation.[2]  *See, e.g.*, *Reproductive Health Services v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (where state officials have not asked Attorney General to take an action to enforce a statute, issuing injunction against the Attorney General "looks very much like the impermissible grant of federal court relief against the State"); *Advanced Auto Transp., Inc. v. Pawlenty*, No. CIV.10-159, 2010 WL 2265159, at *3 (D. Minn. Jun. 2, 2010) ("Nor is the mere fact that an attorney general has a duty to prosecute all actions in which a state is interested enough to make [her] a proper defendant in every such action."); *Minn. Citizens Concerned for Life*, 2011 WL 797462, at *4 ("[C]onditional authority to prosecute an indictable offense at the Governor's request is insufficient to maintain the attorney general as a defendant in this action.").

## II.   THE MINNESOTA HUMAN RIGHTS ACT DOES NOT VIOLATE PLAINTIFFS' FIRST AMENDMENT RIGHTS.

Defendants have submitted briefing on Plaintiffs' First Amendment claims in their Memorandum In Opposition to the Preliminary Injunction at 6-24.  To avoid duplicative briefing, Defendants incorporate by reference those arguments.  Defendants

---

[2]  Because the Attorney General would be acting in a representation capacity on behalf of the Minnesota Department of Human Rights, injunctive relief against the Commissioner of Human Rights would provide Plaintiffs the full relief they seek in this case.  Regardless, for all the reasons stated herein, Plaintiffs have not stated a viable claim against either Defendant.

will respond to one additional First Amendment argument asserted in Plaintiffs' Amended Complaint, but not in their Motion for Preliminary Injunction.

### A.    The Minnesota Human Rights Act Does Not Compel Speech.

As fully discussed in Defendants' Memorandum in Opposition to Preliminary Injunction at 8-14, Plaintiffs' Free Speech Claim (First Cause of Action) fails because the MHRA regulates Plaintiffs' commercial conduct, not their speech.

"[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written or printed." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)); *Young v. Rickets*, 825 F.3d 487, 492 (8th Cir. 2016) (same).  "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

The MHRA "neither limits what [plaintiffs] may say nor requires them to say anything." *Rumsfeld*, 547 U.S. at 60; *see also Jaycees*, 468 U.S. at 624 (holding that the goal of MHRA is "unrelated to the suppression of expression")  Rather, "[i]t affects what [plaintiffs] must *do*—afford equal access…—not what they may or may not *say*." *Rumsfeld*, 547 U.S. at 60.  Because the MHRA as applied to Plaintiffs would regulate conduct, not speech, it does run afoul of the First Amendment.

Plaintiffs argue that they are engaging in protected speech by making videos for their customers.[3]  When selling services to the public, a business "express[es] its client's messages in its photographs . . . because it is hired to do so." *Elane Photography, LLC v. Willock*, 309 P.3d 53, 66 (N.M. 2013) *cert denied* 134 S. Ct. 1787 (2014); *D'Amario v. Providence Civic Cntr. Auth.*, 639 F. Supp. 1538, 1541 (D.R.I. 1986), *aff'd*, 815 F.2d 692 (1st Cir. 1987) (event photography is "conduct, pure and simple").   The cases Plaintiffs rely on do not reach a contrary conclusion.  *See* Defs.' Mem. In Opp. To P.I. at 12-14.  As such, Plaintiffs proposed conduct is not protected by the First Amendment.

In any event, as set forth in Defendants' Memorandum In Opposition to the Preliminary Injunction at 14-16, the United States Supreme Court has already found that the MHRA satisfies strict scrutiny, *Jaycees*, 468 U.S. at 624, 628, and therefore comports with any lower level of scrutiny that may apply.  *O'Toole v. O'Connor*, 802 F.3d 783, 789 (6th Cir. 2015) (analyzing preliminary injunction motion, although the parties disagreed whether strict scrutiny applied, the court concluded that it did not matter because plaintiff did not demonstrate likelihood of success on merits if strict scrutiny was applied); *Alaskan Indep. Party v. Alaska*, 545 F.3d 1173, 1180 (9th Cir. 2008), *as amended* (Oct. 22, 2008) ("[W]e ultimately need not decide what level of

---

[3] For the MHRA to apply, Telescope must be a public accommodation or be engaged in a business or the provision of a service. Telescope alleges that the laws apply to them. *See* Am. Compl. ¶¶ 81-82.  To the extent Telescope would hold their videography service out to the public, the Minnesota Department of Human Rights agrees the MHRA would apply.

scrutiny to apply, because Alaska's primary election law withstands even strict scrutiny."); *Adams v. Zenas Zelotes, Esq.*, 606 F.3d 34, 38 n.2 (2d Cir. 2010) (similar).

### B.  Plaintiffs' Free Association Claim Also Fails As A Matter Of Law.

For the reasons stated in Defendants' Memorandum In Opposition to Preliminary Injunction at 16-18, Plaintiffs' claim that the MHRA violates their First Amendment right to expressive association (Second Cause of Action) also fails as  matter of law. The court has never "accorded affirmative constitutional protections" to an associational right to engage in "[i]nvidious private discrimination." *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (denying law firm's First Amendment association challenge to Title VII, claiming a right to discriminate against a female lawyer) (quoting *Norwood v. Harrison*, 413 U.S. 455, 470 (1973)).  Indeed, "a speaker cannot erect a shield against laws requiring access simply by asserting that mere association would impair its message." *Rumsfeld*, 547 U.S. at 69 (citation and quotation marks omitted).

A company that sells public accommodations and services is not organized for an expressive purpose and is not the type of "association" afforded constitutional protections.  *See Rumsfeld*, 547 U.S. at 69; *City of Dallas v. Stranglin*, 490 U.S. 19, 24-25 (1989); *Gifford v. McCarthy*, 137 A.D.3d 30, 42 (N.Y. App. Div. 2016).

### C.  Plaintiffs Have Not Alleged A Cognizable Free Exercise Claim.

Plaintiffs' Third Cause of Action alleges a violation of the First Amendment Rights to Free Exercise of Religion.  Am. Compl. ¶¶ 245-275.  As set forth in Defendants' Memorandum in Opposition to Preliminary Injunction at 18-23, Plaintiffs'

Free Exercise claim fails because the MHRA is a "valid and neutral law of general applicability."

The Free Exercise Clause of the First Amendment "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp't Div. v. Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990). The Supreme Court has explained:

> [w]hen followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity. Granting an exemption….operates to impose [the follower's] religious faith on the [person sought to be protected by the law].

*United States v. Lee*, 455 U.S. 252, 261 (1982).

The MHRA is both neutral and generally applicable. *See State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 852, 851 (Minn. 1985) ("Because the State of Minnesota is neither attempting to regulate religious beliefs or to single out any particular religious belief for adverse treatment, the Minnesota Human Rights Act is a facially-neutral regulation." (*citing Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972)); *see also Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272 (Colo. App. 2015), *cert pet. filed* (U.S. July 22, 2016) (denying argument that Free Exercise Clause allows baker to decline to make a cake for same-sex wedding in violation of anti-discrimination law); *Elane Photography*, 30-9 P.2d at 72-75 (same as to photographer).

Although not raised in the Motion for Preliminary Injunction, Plaintiffs allege in their Amended Complaint that they are asserting a "hybrid rights claim."  Am. Compl. ¶ 263.  Essentially, Plaintiffs allege that their free exercise claim should be entitled to strict scrutiny even though the MHRA is neutral and generally applicable because they are asserting it along with other alleged constitutional violations.  *Id.*

The so-called "hybrid-rights" standard has been described as controversial, illogical, and untenable.  *See Combs v. Homer-Ctr Sch. Dist*, 540 F.3d 231, 243-47 (3d Cir. 2008) (per curiam).  The theory of hybrid rights derives from *Employment Division v. Smith* where the court stated:

> The only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections . . . ."

*Smith*, 494 U.S. at 881.  This language is dicta, was not applied in *Smith*, and has not been applied by the United States Supreme Court since *Smith* was decided in 1990. *Combs*, 540 F.3d 231; *see also Leebaert v. Harrington*, 332 F.3d 134, 144 (2d Cir. 2003) (rejecting hybrid-rights theory); *Kissinger v. Board of Trustees of Ohio State University*, 5 F.3d 177, 178 (6th Cir. 1993) (same).  The Eighth Circuit has also never squarely addressed the question.

*Smith* involved two plaintiffs who worked at a rehabilitation center and were fired after participating in a religious peyote ceremony.  *Smith*, 494 U.S. 872.  The State refused to grant them coverage under unemployment insurance, and they alleged violations of their First Amendment rights.  *Id.*  As Justice Souter later pointed out,

*Smith* cannot be read to simply mean that any Free Exercise claim is entitled to strict scrutiny whenever "another constitutional right is implicated." *Lukumi*, 508 U.S. at 567 (concurring). Such a "hybrid exception would probably be so vast as to swallow the *Smith* rule, and, indeed, the hybrid exception would cover the situation exemplified by *Smith*, since free speech and associational rights are certainly implicated [in that case]." *Id*.

Nonetheless, a handful of courts have recognized some version of a hybrid-rights claim. In so doing, the courts have declined to apply strict scrutiny to a Free Exercise claim until a plaintiff proves either that the other constitutional claim is independently viable, *e.g.*, *E.E.O.C. v. Catholic University*, 83 F.3d 455, 467 (D.C. Cir. 1996), or at a minimum, that the plaintiff is likely to succeed on the other constitutional claim, *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1280 (10th Cir. 2004). For all the reasons stated herein and in Defendants' Memorandum in Opposition to Preliminary Injunction at 6-24 (explaining why Plaintiffs' claims are not likely to succeed on their claims), Plaintiffs' other constitutional claims are neither independently viable nor even likely to succeed on the merits. As such, Plaintiffs' Free Exercise claim is not entitled to strict scrutiny under any test.

Indeed, although strict scrutiny does not apply, the MHRA satisfies a strict scrutiny analysis because it furthers a compelling state interest and is narrowly tailored to that interest. Defs.' Mem. In Opp. to P.I. at 14-16, 22-23. *See also Lukumi*, 508 U.S. at 531-32; *Jaycees*, 468 U.S. at 625-28 (recognizing that the MHRA serves compelling state interests and also is narrowly tailored); *New York State Club Ass'n v. New York*

*City*, 487 U.S. 1, 14 n.5 (1988) (recognizing "the State's 'compelling interest' in combating invidious discrimination"); *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) ("public accommodations laws plainly serv[e] compelling state interests of the highest order, and government has a compelling interest in eliminating discrimination against women"):  *Bob Jones Univ v. United States*, 461 U.S. 574, 604 (1983) (government has a "compelling . . fundamental, overriding interest in eradicating racial discrimination"); *Gay Rights Coalition of Georgetown Univ. Law Center v. Georgetown Univ.*, 536 A.2d 1, 38 (D.C. 1987) (government has compelling interest in "eradicating sexual orientation discrimination").  There is no constitutional violation.

### D.    The MHRA Does Not Impose Unconstitutional Conditions.

Plaintiffs allege Minn. Stat. §§ 363A.11(1) and 363A.17(3) impose unconstitutional conditions on their access to Minnesota's marketplace. Am. Comp. ¶¶ 276-82. Defendants incorporate by reference all arguments made in Defendants' Memorandum In Opposition to Preliminary Injunction, which show that Plaintiffs are wrong for at least two reasons. First, the unconstitutional conditions doctrine does not apply because Plaintiffs have not alleged a government "benefit." *See* Defs.' Mem. In Opp. To P.I. at 23.  Second, even if the unconstitutional conditions doctrine applies (it does not), the "condition" of having to follow the Minnesota Human Rights Act is not unconstitutional. *See* Defs.' Mem. In Opp. To P.I. at 23-24.

III.   **PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS ALSO FAIL AS MATTER OF LAW.**

Plaintiffs also allege that the MHRA violates their Fourteenth Amendment right to equal protection (Fifth Cause of Action), procedural due process (Sixth Cause of Action), and substantive due process (Seventh Cause of Action).

To the extent Plaintiffs assert the claims as facial challenges, they all fail under the *Solerno* Doctrine.  To prevail in a facial challenge, Plaintiffs bear the burden of "establish[ing] that no set of circumstances exists under which [Minn. Stat. §§ 363A.11(1) and 363A.17(3)] would be valid." *See United States v. Salerno*, 481 U.S. 739, 745, (1987).  Plaintiffs do not allege that the challenged provisions are unconstitutional in all circumstances, and indeed, as indicated *supra*, courts have upheld and enforced the MHRA in various forms since 1885.  *See* Defs.' Mem. In Opp. to P.I.

To the extent Plaintiffs assert as-applied claims, the claims lack standing and are not ripe.  *Supra* at 4-7.  Plaintiffs Fourteenth Amendment claims also fail for the following reasons:

### A.    The MHRA Does Not Violate Plaintiffs' Equal Protection Rights.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *True v. Nebraska*, 612 F.3d 676, 683 (8th Cir. 2010).  As a threshold matter, then, Plaintiffs must demonstrate that they are treated "differently than similarly situated" individuals. *Ganley v. Minneapolis Park and Recreation Bd.*, 491 F.3d 743,

747 (8th Cir. 2007).  Further, unless Plaintiffs are part of suspect class or their claims involve a fundamental right, the equal protection claim is subject to rational basis review.  *Id.*

The MHRA is a facially neutral law, and applies to all those who offer public services and accommodations. Minn. Stat. §§ 363.11 and 363.17.  Plaintiffs base their equal protection violation on the allegation that they are "similarly situated to other expressive businesses in Minnesota that provide marriage-related services that express messages about marriage" and claim that they are treated differently because a business that does not discriminate against same-sex couples is not punished.  Am. Compl. at ¶¶ 285, 287-89.  But the MHRA applies to all individuals who deny services based on a protected characteristic, regardless of the reason for their action.  For example, if a videographer refused to work on opposite-sex weddings or religious weddings, that person would also be in violation of the MHRA.  As such,  Plaintiffs are treated the same as similarly situated individuals.

Plaintiffs are not similarly situated to other businesses who do not deny services based on protected characteristic and, therefore, may be treated differently under the MHRA.  But "state actors may . . . treat dissimilarly-situated people dissimilarly without running afoul of the protections afforded by the clause."  *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000)*; see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 223–25, (1995) ("A denial of equal protection entails, at a minimum, a classification that treats individuals unequally.")

The MHRA also does not target a suspect class nor burden Plaintiffs fundamental rights.  Plaintiffs are not, and do not allege they are, part of a suspect class.  Further, for the reasons indicated *supra* at II, Plaintiffs have not identified a fundamental right that is burdened by the MHRA.  Plaintiffs also do not identify any discriminatory intent, *see Corp. of Presiding Bishop of Church of Christ of Latter Day-Saint v. Amos*, 483 U.S. 327, 339 (1987) (applying rational-basis equal protection scrutiny to statutory religious exemption and noting that under the First Amendment "the government may (and sometimes must) accommodate religious practices"), nor any constitutionally relevant under inclusiveness, *see e.g., Vance v. Bradley*, 440 U.S. 93, 108 (1979).

Finally, as demonstrated *supra* at 10-11, the MHRA serves Minnesota's rational and compelling state interest in prohibiting discrimination and all businesses are subject to the same prohibitions on discrimination regardless of their religious or other beliefs.  For all of these reasons, Plaintiffs Equal Protection claim fails as a matter of law.

## B.      The MHRA Does Not Violate Procedural Due Process.

Plaintiffs allege that Minn. Stat. § 363A.17(3) violates procedural due process because the phrase "legitimate business purpose" is unconstitutionally vague.   Am. Compl.   ¶ 298-306.  But the phrase "legitimate business purpose" is the same legal standard applied by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Given the significant legal authority applying this phrase, Plaintiffs' claim fails as a matter of law.

Under the Fourteenth Amendment, a party has a right to due process of law before deprivation of "life, liberty, or property." U.S. Const. amend XIV, § 1; *see also Christiansen v. W. Branch Cmty. Sch. Dist.,* 674 F.3d 927, 934 (8th Cir. 2012) (discussing due process and property and liberty interests).[4]   A statute is void for vagueness under the Fourteenth Amendment if it "'either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'"  *Jaycees*, 468 U.S. at 629 (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)) (dismissing claims that the MHRA was unconstitutionally vague under the Fourteenth Amendment).

In a prior case considering whether the MHRA was unconstitutionally vague, the United States Supreme Court upheld the law because it used "familiar standards" that other courts use, which "ensure[s] that the reach of the statute is readily ascertainable."[5] *See Jaycees*, 468 U.S. at 629-30.  Likewise, "legitimate business purpose" is not vague because courts analyze this and similar phrases with exceeding regularity, especially in

---

[4] Procedural due process is required only when a party has a protected interest at stake. *See Phillips v. State*, 725 N.W.2d 778, 782 (Minn. App. 2007); *see also Szajner v. Rochester Pub. Sch.*, No. 13-2417 DWF/SER, 2015 WL 632147, at *6 (D. Minn. Feb. 13, 2015) (discussing standard). Plaintiffs do not identify what protected property or liberty interest underlies their claim.

[5] The court did not analyze the phrase "legitimate business purpose" but instead focused on the Minnesota Supreme Court's analysis of other aspects of the law.  *Id.*

the context of the *McDonnell-Douglas* framework.[6] *E.g.*, *McDonnell Douglas Corp.*, 411 U.S. 792 (creating test requiring courts to consider any "legitimate, nondiscriminatory reason" for alleged discriminatory act); *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 998 (1988) (analyzing whether employment decisions alleged to have a discriminatory impact in violation of Title VII relate to "legitimate business purposes"); *Gallagher v. Magner*, 619 F.3d 823, 836 (8th Cir. 2010) (considering existence of a "legitimate business justification" for action alleged to violate the Fair Housing Act); *Manning v. American Republic Ins. Co.*, 604 F.3d 1030, 1043 (8th Cir. 2010) (considering existence of "legitimate business interests" to justify action in ERISA retaliation claim)

Minnesota courts have expressly tied the *McDonnell-Douglas* framework to analysis of MHRA claims. *See, e.g.*, *Wilking v. County of Ramsey*, 153 F.3d 869, (8th Cir. 1998) (considering employer's "legitimate business expectations" in analyzing both ADA and MHRA claims under *McDonnell-Douglas* framework); *Aase v. Wapiti Meadows Cmty. Techs. & Servs., Inc.*, 832 N.W.2d 852, 857 (Minn. App. 2013) (interpreting Minnesota Human Rights Act, stating second step of *McDonnell-Douglas*

---

[6] Minnesota law uses the concept of "legitimate business purposes" to analyze discrimination claims in other contexts as well. *See Walters v. Demmings*, No. C4-01-2, 2001 WL 641753, at *2 (Minn. App. June 12, 2001) (whether eviction was motivated by a legitimate business purpose); *Parkin v. Fitzgerald*, 307 Minn. 423, 429, 240 N.W.2d 828, 832 (1976) (same); *Hubbard Cty. Health & Human Servs. v. Zacher*, No. A08-2172, 2009 WL 3364256, at *4 (Minn. App. Oct. 20, 2009) (in child support case, whether father retained business earnings for a legitimate business purpose); *Harris v. Mardan Bus. Sys., Inc.*, 421 N.W.2d 350, 353 (Minn. App. 1988) (no violation of fiduciary duty where person demonstrated legitimate business purpose).

test is satisfied if defendant shows some evidence its actions were related to a "legitimate business purpose"); *State v. Sci. Computers, Inc.*, 393 N.W.2d 200, 203 (Minn. App. 1986) (same); *Ridler v. Olivia Pub. Sch. Sys. No. 653*, 432 N.W.2d 777, 782 (Minn. App. 1988) (same).  In short, Plaintiffs' claim that this frequently-employed phrase is "unconstitutionally vague" plainly fails as a matter of law.

### C.  Plaintiffs' Substantive Due Process Claim Also Fails.

Plaintiffs also bring a substantive due process claim, alleging that Minn. Stat. §§ 363A.11(1) and 363.17(3) violated their rights under the Fourteenth Amendment. Am. Compl. ¶¶ 308-28.

As an initial matter, the Court must dismiss Plaintiffs' substantive due process claim because it is simply a re-pleading of their First Amendment claims.  The Supreme Court has "always been reluctant to expand the concept of substantive due process." *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994).  As such, the Court has admonished that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notice of substantive due process, must be the guide for analyzing these claims." *Id.* at 273 (quoting *Graham v. Connor*, 409 U.S. 386 (1989)); *see also, e.g., Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (declining to considering substantive due process claim which was merely duplicative of First Amendment claim); *Shimota v. Wegner*, No. 15-1590 (JRT/FLN), 2016 WL 1254240, at *8 (D. Minn. Mar. 29, 2016) (denying, *inter alia*, free speech claims pled under the Fourteenth Amendment because such claims should be

"considered under the amendment that provides the substantive right" (citing *Albright*, 510 U.S. at 273)).

Plaintiffs' substantive due process claim asserts that the MHRA violates their liberty interest because it allegedly forces them to "facilitate, participate in, celebrate, and produce expression favorable to same-sex weddings." Am. Compl. ¶ 321. The claim relies on the same alleged facts and claims (*i.e.*, expression about same-sex weddings) that form Plaintiffs' First Amendment claim. This is precisely the type of creative re-pleading that the United States Supreme Court rejected in *Albright*. 510 U.S. at 269 (plaintiff alleged that he was deprived of "substantive due process under the Fourteenth Amendment—his 'liberty interest'—to be free from criminal prosecution except upon probable cause") The Fourteenth Amendment does not allow a plaintiff to "save or expand [First Amendment] claims by attaching an 'additional constitutional label' to them." *Lindell v. Huibregtse*, 205 Fed. Appx. 446, 449-50 (7th Cir. 2006).

Even if it were not simply a re-packaged First Amendment claim, Plaintiffs' substantive due process claim would fail as a matter of law. Substantive due process is the recognition that the Due Process Clause "guarantees more than fair process, it also provides heightened protection against government interference with certain fundamental rights and liberties so "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 719–21 (1997) (internal citations and quotation marks omitted) (noting that substantive due process

rights have been recognized in limited areas such as right to marry and marital privacy, have children and direct their upbringing of children, and bodily integrity).

Plaintiffs' claim fails to meet this standard. Plaintiffs do not identify a liberty interest so fundamental that it should be entitled to protection under substantive due process. Plaintiffs attempt to frame their fundamental right as the right to pursue their "entrepreneurial dreams." Am. Compl. ¶¶ 311-12.[7] Courts have declined to recognize such a broad fundamental right. *See, e.g.*, *Hawkeye Commodity Promotions Inc. v. Vilsack*, 486 F.3d 430 (8th Cir. 2007) (finding lottery game retailer did not have fundamental right to engage in lottery business and hold that the Fourteenth Amendment "allows the State wide latitude" for "social and economic legislation"); *see also Lupert v. California State Bar,* 761 F.2d 1325, 1327 n. 2 (9th Cir.), *cert. denied,* 474 U.S. 916, (1985) ("There is no basis in law for the argument that the right to pursue one's chosen profession is a fundamental right . . . ."); *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978) ("[T]he theory that classifications affecting the right to pursue a legitimate business demand strict scrutiny flies in the face of the well[-]established rule that state regulations of business and industry are to be reviewed under the less exacting . . . standard." (citing *Dandridge v. Williams*, 397 U.S. 471 (1970); *McGowan v. Maryland*, 366 U.S. 420 (1961); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483

---

[7] Plaintiffs' Amended Complaint alleges that that they run a successful privately-owned videography business. Therefore, Plaintiffs are neither public employees nor prohibited from working. *See Flowers v. City of Minneapolis*, 478 F.3d 869 (8th Cir. 2007).

(1955));  *Caldwell v. Pima Cnty*, 172 Ariz. 352 (Az. App. 1992); *Blue Sky Bar v. Town of Stratford*, 523 A.2d 467 (Conn. 1987).

"[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." *Myers v. Scott County,* 868 F.2d 1017, 1018 (8th Cir.1989).  A law requiring that state business refrain from discriminating in providing services to the public is not such a case.  Plaintiffs have identified no fundamental right protected by substantive due process, and in any event, the MHRA survives even strict scrutiny, *supra* at 10-11.[8]

## CONCLUSION

For the reasons stated herein and in Defendants' Memorandum in Opposition to Preliminary Injunction, Defendants respectfully requests Plaintiffs Amended Complaint be dismissed with prejudice.

*Signature on page 25*

---

[8] In *Karsjens v. Piper*, 845 F.3d 394, 408 (8th Cir. 2017), the Eighth Circuit applied a shocks-the-conscience standard to an as-applied claim.  If the MHRA were enforced against Plaintiffs in the future, doing so certainly would not be egregious or outrageous or inspired by malice and sadism.  *Id.*

Dated:  February 15, 2017

Respectfully submitted,

OFFICE OF THE ATTORNEY
GENERAL
State of Minnesota

s/ **Alethea M. Huyser**

Alethea M. Huyser
Assistant Solicitor General
Atty. Reg. No. 0389270

Janine Kimble
Assistant Attorney General
Atty. Reg. No. 0392032

Eric Brown
Assistant Attorney General
Atty. Reg. No. 0393078

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
(651) 757-1243 (Voice)
(651) 282-5832 (Fax)
alethea.huyser@ag.state.mn.us
janine.kimble@ag.state.mn.us
eric.brown@ag.state.mn.us

ATTORNEY FOR DEFENDANTS