## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Telescope Media Group, a Minnesota corporation, Carl Larsen and Angel Larsen, the founders and owners of Telescope Media Group, | Civ. No. 16-CV-04094 (JRT-LIB) |
| Plaintiffs, | |
| v. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| Kevin Lindsey, in his official capacity as Commissioner of the Minnesota Department of Human Rights and Lori Swanson, in her official capacity as Attorney General of Minnesota, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Telescope Media Group, and its owners Angel and Carl Larsen, ("Plaintiffs") have moved for a preliminary injunction, seeking relief from the possibility that they may in the future be charged with violating the Minnesota Human Rights Act ("MHRA"). Specifically, Plaintiffs state that they someday want to sell wedding videography services to the public, but do not want to sell them to same-sex couples. Plaintiffs allege First Amendment rights to discriminate against these customers and ask the Court to enjoin Defendants from someday enforcing the MHRA against this unlawful practice.

Plaintiffs' motion should be denied.  First, Plaintiffs are not likely to succeed on the merits because courts have long recognized that there is no First Amendment right for a business to discriminate against customers based on their protected status, whether it be on the basis of race, national origin, sexual orientation, gender, or religion, etc.  Second, Plaintiffs own delay in bringing this matter before the Court demonstrates the lack of irreparable harm they will suffer.  Finally,  the balance of harm and public interest weighs in favor of denying preliminary injunctive relief, because creating Plaintiffs' proposed exemption from Minnesota's anti-discrimination law would undermine its purpose and expose Minnesotans to the "unique evils" and "stigmatizing injury" caused by invidious discrimination.  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 625-628 (1984).

## BACKGROUND

I.   **MINNESOTA'S HUMAN RIGHTS ACT**

The Minnesota Legislature passed the Minnesota Human Rights Act, a state law prohibiting discrimination, approximately 130 years ago.  Act of March 7, 1885, ch. 224, § 1, 1885 Minn. Laws 295, 296.  At that time, in 1885, the MHRA provided that all persons in Minnesota "of every race and color" would be entitled to "full and equal enjoyment" of public accommodations and services "regardless of any previous condition of servitude."  *Id.*

A bill to add sexual orientation as a protected status was first introduced in 1973, but it did not pass at that time.   Allan H. Spear, *Crossing the Barriers: The Autobiography of Allan H. Spear* 276-78 (2010), excerpt attached to Affidavit of Janine Kimble as Ex. 1.  In 1990, Governor Rudy Perpich convened the Governor's Task Force

on Gay and Lesbian Minnesotans; he asked the Task Force to evaluate whether discrimination based on sexual orientation was occurring and, if so, to make appropriate recommendations.   Report of the Governor's Task Force on Lesbian and Gay Minnesotans 1 (1991), attached to Kimble Aff. as Ex. 2.   The Task Force found "substantial societal hostility to homosexuality" which was "often embodied in federal and state laws and politics."  *Id.* at 3.

Among the key findings of the Task Force were:

Out of several hundred recommendations received by this Task Force at public hearings and briefings, an underlying theme was the need to add gays and lesbians as a protected class under the Minnesota Human Rights Act. . . . [T]he overwhelming body of testimony from gays, lesbians and heterosexuals indicates that, as a group, gays and lesbians are the targets of considerable discrimination in the State of Minnesota. . . .
Several people testified that they had been denied motel or hotel rooms when the inn-keepers discovered they were gay, remarking "We don't want your kind here."
. . . .
The overwhelming body of testimony and data indicates that discrimination against gays and lesbians is wide-spread. . . . Adding sexual orientation to the Minnesota Human Rights Act would do much to help eliminate or reduce this problem.

*Id.* at 5-6.   The Task Force concluded that the discrimination was "damaging to gay men and lesbians and ultimately is damaging to society as a whole."  *Id.* at 3.

A bill was introduced in 1993 to add sexual orientation to the list of protected classes in the MHRA.   The Legislature took testimony, which included support for the bill from religious organizations.   Hearing on S.F. 444, S. Jud. Comm., 78th Minn. Leg., Feb. 22, 1983 (audio tape) (comments of Brian Rusche, Joint Religious Legislative Council; comments of Fr. Ed Flahavan, Governor's Task Force on Lesbian and Gay

Minnesotans); Hearing on H.F. 585, H. Jud. Comm., 78th Leg., Mar. 5, 1993 (audio tape) (comments of Brian Rusche, Joint Religious Legislative Council; comments of Fr. Ed Flahavan, Governor's Task Force on Lesbian and Gay Minnesotans); *see also* Joint Religious Legislative Coalition Position on Human Rights With Regard to Sexual Orientation (Feb. 25, 1993), Kimble Aff., Ex. 3; Statement of James D. Habiger, Executive Director of the Minnesota Catholic Conference (Mar. 1, 1993), Kimble Aff., Ex. 4. *See generally* Letter from Hubert H. Humphrey, Minnesota Attorney General, to Allan H. Spear, Minnesota State Senator (Mar. 1, 1993) ("The fundamental principles underlying your proposed legislation are as compelling as they are simple: the right to hold a job should be based solely on the ability to perform the work; the right to housing should not be denied on the basis of prejudice against persons of a particular sexual orientation; the right to public accommodations, public services and freedom from personal harm, should be guaranteed to all."), Kimble Aff., Ex. 5.

The Minnesota Legislature ultimately passed the legislation that amended the Minnesota Human Rights Act to prohibit discrimination based on sexual orientation. *See* Act of April 2, 1993, ch. 22, § 10, 1993 Minn. Laws 131-32.

## II.   PLAINTIFFS' ALLEGATIONS

Plaintiffs Angel and Carl Larsen are a married couple who own and operate Telescope Media Group, a for-profit company.  Am. Compl. (Doc. 13) at ¶¶ 1, 21-23. Telescope Media Group has been registered with the Minnesota Secretary of State's office since 2008.  Kimble Aff., Ex. 6.  Plaintiffs allege that Telescope Media Group enters into contracts to provide videography services to its clients.  Am. Compl. at ¶¶ 82,

87, 89.   Plaintiffs state that they try to restrict their videography work to "promote messages" that are consistent with their beliefs. *Id.* at ¶ 97.  Plaintiffs also state that they frequently turn down videography projects because the requests for their service exceed their capacity. *Id.* at ¶ 98.

Plaintiffs allege that their projects have not historically included wedding videography, but they express a desire to begin selling wedding videography in the future. *Id.* at ¶ 160.  However, Plaintiffs believe that same-sex marriage is not "morally equivalent to the historic, biblically-orthodox definition of marriage as between one man and one woman." *Id.* at ¶ 116.  Plaintiffs therefore wish to enter into contracts with opposite-sex couples to record their marriages. *Id.* at ¶¶ 129-34. Plaintiffs oppose same-sex marriage and do not want to sell their wedding videography services to same-sex couples. *Id.* at ¶¶ 5-6.

Plaintiffs claim that the MHRA violates their constitutional rights under the First Amendment of the United States Constitution and seek an injunction precluding enforcement of the MHRA for denying videography services to same-sex couples. *See generally id.*

## STANDARD OF REVIEW

"Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction would inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

In a case such as this, Plaintiffs bear the heavy burden of establishing as a threshold matter that they are likely to succeed on the merits.   The Eighth Circuit reasoned in *Planned Parenthood of Minn., N.D., S.D. v. Rounds* as follows:

> [A] more rigorous standard 'reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'   If the party with the burden of proof makes a threshold showing that *it is likely to prevail on the merits, the district court should then proceed to weigh the other Dataphase factors*.

530 F.3d 724, 731 (8th Cir. 2008) (emphasis added; citation omitted).  Plaintiffs have not and cannot meet their burden.

## ANALYSIS

## I.   PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS

Anti-discrimination laws have withstood First Amendment challenges for decades. *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69 (1984) (law firm did not have First Amendment Rights of expression or association to discriminate on the basis of gender in violation of Title VII); *Bob Jones Univ. v. United States*, 461 U.S. 574 (1983) (First Amendment does not preclude federal government from withholding tax benefits to religious school with racially discriminatory admissions standards based on their religious beliefs); *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1 (1988) (private club has not shown First Amendment right to exclude women in violation of city anti-discrimination law); *E.E.O.C. v. Fremont Christian Sch.*, 781 F.2d 1362, 1369 (9th Cir. 1986) (religious school does not have a First Amendment right to discriminate based on gender and marital status in violation of Title VII); *E.E.O.C. v. Mississippi Coll.*, 626

6

F.2d 477, 489 (5th Cir. 1980) (applying Title VII to religious school does not violate First Amendment); *Blanding v. Sports & Health Club, Inc.*, 373 N.W.2d 784, 793 (Minn. App. 1985), *aff'd*, 389 N.W.2d 205 (Minn. 1986) (applying Minneapolis ordinance prohibiting discrimination on the basis of sexual orientation does not violate First Amendment).

The United States Supreme Court has specifically upheld the MHRA against First Amendment challenges. *E.g., Jaycees*, 468 U.S. 609 (upholding MHRA against Jaycees' First Amendment association claims); *State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 852, 853 (Minn. 1985) (First Amendment did not permit health club owned by "born again Christians" to refuse to hire or fire individuals based on lifestyles that did not comport with owners' religious beliefs).  Public accommodation laws "such as this are well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination and they do not, as a general matter, violate the First or Fourteenth Amendment."  *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 572 (1995)

In 2015, the United States Supreme Court held that "the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2604-05 (2015). Since the United States Supreme Court's ruling, as well as passage of state same-sex marriage laws, courts have consistently continued to reject claims that anti-discrimination laws requiring businesses to serve same-sex couples violate First Amendment rights. *See Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272 (Colo. App.

2015), *cert. pet. filed* (U.S. July 22, 2016) (wedding cake baker); *Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013) (wedding photographer), *cert. denied*, 134 S. Ct. 1787 (2014); *Gifford v. McCarthy*, 137 A.D.3d 30, 42 (N.Y. App. Div. 2016) (wedding venue); *In the Matter of: Melissa Elaine Klein, dba Sweetcakes by Melissa, and Aaron Wayne Klein, dba Sweetcakes by Melissa, and, in the Alternative, Individually as an Aider and Abettor under ORS 659A.406, Respondents*, 2015 WL 4868796, at *18 (Or. Bur. Labor & Indust. July 2, 2015) (wedding cake baker); *see also State of Washington v. Arlene's Flowers, Inc.*, No. 13-200871-5 (Wash. Sup. Ct. Feb. 18, 2015), *appealed*, No. 91615-2 (Wash. argued Nov. 15, 2016) (florist), attached to Kimble Aff., Ex. 7.[1]

Plaintiffs' claims fail for the same reason that prior similar claims have consistently been rejected:  there simply is no First Amendment right for a business to refuse services or accommodations to a customer based on that customer's race, religion, national origin, gender or sexual orientation.

### A.    The MHRA Does Not Violate Rights of Free Speech.

---

[1] Courts have also rejected similar objections when raised in race-based cases.  *See Loving v. Virginia*, 388 U.S. 1, 3 (1967); *Newman v. Piggie Park Enterprises, Inc.*, 256 F.Supp. 941, 945 (D.S.C. 1966) (owner of restaurant chain refused to serve black patrons based on his religious beliefs opposing racial integration), *aff'd* 390 U.S. 400, n.5 (1968) (describing "defendants' contention that [Title VII] was invalid because it 'contravenes the will of God' and constitutes an interference with the 'free exercise of Defendant's religion'" as "patently frivolous" and explaining that "this is not even a borderline case"); *see also* William N. Eskridge Jr., *Noah's Curse:  How Religion Often Conflates Status, Belief, and Conduct to Resist Antidiscrimination Norms*, 45 GA. L. REV. 657, 660, 671-77 (2011) ("There is nothing new about civil equality-religious liberty clashes, for they proliferated over the issue of race.")

The First Amendment protects both "the decision of what to say and what not to say." *Riley v. Nat'l Fed. of Blind of N.C., Inc.*, 487 U.S. 781 (1988). But "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566-67 (2011). "It is also true that the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.* at 567.

"[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written or printed." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)); *Young v. Rickets*, 825 F.3d 487, 492 (8th Cir. 2016) (same). As the Supreme Court has explained:

> Congress, for example, can prohibit employers from discriminating in hiring on the basis of race. The fact that this will require an employer to take down a sign reading "White Applicants Only" hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct.

*Rumsfeld*, 547 U.S. at 62.

Plaintiffs' First Amendment Speech claims fail because they involve commercial conduct, not expression.

### i.       The MHRA Does Not Compel Speech.

Plaintiffs incorrectly allege the MHRA compels speech. The MHRA regulates commercial conduct, not speech or expression. *Jaycees*, 468 U.S. at 624 (holding that the

goal of MHRA is "unrelated to the suppression of expression").  The MHRA provides

that it is an unfair discriminatory practice:

> (1) **to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of** race, color, creed, religion, disability, national origin, marital status, **sexual orientation**, or sex, or for a taxicab company to discriminate in the access to, full utilization of, or benefit from service because of a person's disability[.]

Minn. Stat. § 363A.11, subd. 1(a)(1) (emphasis added).

> It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service:
>
> (3) **to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of** a person's race, national origin, color, sex, **sexual orientation**, or disability, unless the alleged refusal or discrimination is because of a legitimate business purpose.

Minn. Stat. § 363A.17(3) (emphasis added).[2]

The MHRA "neither limits what [plaintiffs] may say nor requires them to say

anything." *Rumsfeld*, 547 U.S. at 60.  Rather, "[i]t affects what [plaintiffs] must *do*—

afford equal access…—not what they may or may not *say*."  *Id.* (emphasis in original).

In short, Plaintiffs are free to express their disagreement with same-sex marriage in film,

on social media, and elsewhere.  But to the extent Plaintiffs engage in the conduct of

---

[2] For the MHRA to apply, Telescope must be a public accommodation or be engaged in a business or the provision of a service. Telescope alleges that the laws apply to them. *See* Am. Compl. ¶¶ 81-82.  To the extent Telescope would hold their videography services out to the public, the Minnesota Department of Human Rights agrees the MHRA would apply.

providing services to the public, the MHRA does not permit Plaintiffs to exclude serving same-sex individuals. *See Elane Photography*, 309 P.3d at 66 ("[B]ecause it is a public accommodation, its provision of services can be regulated.")

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, involved law schools opposed to the military's stance on homosexuals. 547 U.S. at 51-52. The schools tried to exclude the military from recruiting events at their schools. 547 U.S. at 51-52. In response, Congress passed a law called the "Solomon Amendment" requiring that military recruiters be given the same access to students as other employers. *Id.* The law schools alleged that the Solomon Amendment violated their First Amendment rights. *Id.*

The Supreme Court held that the Solomon Amendment regulated "conduct, not speech." *Id.* at 60. It explained that "accommodating the military's message does not affect the law school's speech, because the schools are not speaking when they host interviews and recruiting receptions." *Id.* at 65. The Court further explained that hosting recruiters did not suggest the "law schools agree with any speech by recruiters, and nothing in the Solomon Amendment restricts what law schools may say about the military's policies." *Id.* at 65.

Likewise, Plaintiffs' business services—such as camera operation and editing—are conduct, not speech.[3] When selling services to the public, Plaintiffs "express[] [their]

---

[3] The conduct also is not "symbolic" conduct. *See, e.g., Spence v. Washington*, 418 U.S. 405, 409 (1974) (displaying United States flag with a peace symbol affixed); *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (burning United States flag). As the Supreme Court
(Footnote Continued on Next Page)

clients' messages in [their] photographs . . . because [they are] hired to do so." *Elane Photography*, 309 P.3d at 66; *see also D'Amario v. Providence Civic Cntr. Auth.*, 639 F. Supp. 1538, 1541 (D.R.I. 1986), *aff'd* 815 F.2d 692 (1st Cir. 1987) (event photography is "conduct, pure and simple")  As such, outsiders are unlikely to identify the subject of the video with Plaintiffs.  *See Gifford*, 137 A.D.3d at 42 ("[R]easonable observers would not perceive the [owners'] provision of a venue and services for a same-sex wedding ceremony as an endorsement of same-sex marriage.").

In *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 76-77 (1980), the Supreme Court upheld a state law requiring a shopping center to allow certain expressive activities by others on the property.  The Court "explained that there was little likelihood that the views of those engaging in the expressive activities would be identified with the owner, who remained free to disassociate himself from those views and who was 'not being compelled to affirm [a] belief in any government prescribed position or view.'" *Rumsfeld*, 547 U.S. at 65 (quoting *PruneYard Shopping Center*, 447 U.S. at 88); *see also Bd. of Educ. of Westside Community Schools (Dist. 66) v. Mergens*, 496 U.S. 226, 250 (1990) (recognizing that high school students can understand the difference between speech of school sponsor and speech the school permits).  Plaintiffs are similarly free to

---

(Footnote Continued from Previous Page)

has explained, "[i]t is possible to find some kernel of expression in almost every activity a person undertakes−for example, walking down the street or meeting one's friends at a shopping mall−but such a kernel is not sufficient to bring the activity within the protection of the First Amendment."  *City of Dallas v. Stranglin*, 490 U.S. 19, 24-25 (1989) (community dancing at dance hall not "expressive").  Rather, as discussed *infra* and *supra* at 8-14 Plaintiffs are engaged in commercial conduct.

disassociate themselves from the views of their clients and certainly are not compelled to affirm any government position or view.

The line of cases Plaintiffs rely on are fundamentally different for one universal reason—the cases involve alleged government interference with a speaker's own message, not interference with the sale of a service. *See Elane Photography*, 309 P.3d at 66 ("The cases in which the United States Supreme Court found that the government unconstitutionally required a speaker to host or accommodate another speaker's message are distinctly different because they involve direct government interference with the speaker's own message, as opposed to a message-for-hire.")

For example, Plaintiffs cite cases about filmmakers and television producers, *e.g., Claybooks v. Am. Broadcasting Cos.*, 898 F. Supp. 2d 986 (M.D. Tenn. 2012), but not commercial videographers or camera operators hired to film someone else's project; an organization hosting a parade, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995), but not a party planner or sign maker; and newspaper editors, *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974), but not advertising executives or technical writers hired to express someone else's idea.  The cases Plaintiffs cite involve individuals who create (and sometimes sell) their own content and speech; they do not address individuals who are paid by a customer for performing a service or skill on the customer's behalf.

Thus, in *Tornillo*, a law compelling a newspaper to publish certain content assumed control over key editorial decisions and violated the First Amendment.  418 U.S. 241.  In *Pacific Gas & Elec. Co.*, a plurality of the Court said the State could not compel

a company to include unwelcome third-party speech in its mail to customers. 475 U.S. at 20-21. In all of these cases cited by Plaintiffs, "the government commandeered a speaker's means of reaching its audience and required the speaker to disseminate an opposing point of view." *Elane Photography*, 309 P.3d at 67.

The same is not the case here. The MHRA does not require Plaintiffs to print the names and contact information for competing videographers or to include certain content in their communication with customers. The MHRA also does not prohibit Plaintiffs from making or sharing any type of film.[4] The MHRA simply does not regulate Plaintiffs' expression or speech.

### ii. The MHRA Is Constitutional Under Any Standard Of Review.

Plaintiffs erroneously argue that the MHRA is subject to strict scrutiny because it regulates speech based on content.[5] As discussed above: (1) the MHRA does not regulate the content of speech at all, *supra* at 8-14; and (2) the MHRA is neutral as to "motivating

---

[4] Plaintiffs allege that they will reserve a contractual right to share customers' wedding videos on their own social media. Am. Compl. at ¶¶ 135-36. This is irrelevant. The MHRA does not regulate Plaintiffs' social media. That Plaintiffs may elect unilaterally to distribute certain videos on social media is irrelevant to the Court's interpretation of this law. *See Elane Photography*, 309 P.3d at 68 (plaintiff's choice of which photographs to display to the public "are entirely its own")

[5] In proposing this standard, Plaintiffs also ignore that, even assuming they engaged in speech, it would be commercial speech which is entitled to less protection under the First Amendment and therefore reviewed under a less stringent standard of review. *E.g., Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980). The MHRA is also content and viewpoint neutral. *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 387-88 (1992); *Frisby v. Schultz*, 487 U.S. 474 (1998) (ordinance restricting picketing in front of a residence was content and viewpoint neutral).

ideology," *see* Pls.' Mem. In Supp. of P.I. [Doc. 16] at 22 (quoting *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015)). *But cf.* Minn. Stat. § 363A.11, subd. 1(a)(1) (prohibiting discrimination against any race, any religion, and sexual orientation); *Jaycees*, 468 U.S. at 628 (recognizing interest in regulating discriminatory conduct "wholly apart from the point of view such conduct may transmit").

In any event, the United States Supreme Court has already recognized that the MHRA is supported by compelling interests and is narrowly tailored.   "[A]cts of invidious discrimination in the distribution of publicly available goods, services, and other advantages cause unique evils that the government has a compelling interest to prevent." *Jaycees*, 468 U.S. at 628; *see also McClure*, 370 N.W.2d at 853 (describing State's compelling interest in "insur[ing] that all its citizens have equal opportunity for employment" and "afford[ing] its citizens equal access to all accommodations open to the general public"); *supra* at 2-5 (explaining the Task Force and legislative findings and the rationale behind adding sexual orientation as a protected status in the MHRA).   The MHRA "reflects the State's strong historical commitment to eliminating discrimination and assuring its citizens equal access to publicly available goods and services. That goal, which is unrelated to the suppression of expression, plainly serves compelling state interests of the highest order." *Jaycees*, 468 U.S. at 624 (citation omitted); *supra* at 2-5.

Furthermore, the incidental restriction on Plaintiffs' claimed First Amendment freedoms is no greater than is essential to the furtherance of that interest, because there is no way to prevent discriminatory conduct in the provision of goods and services without outlawing it.   *Jaycees*, 468 U.S. at 628-29; *McClure*, 370 N.W.2d at 853 (holding the

MHRA is narrowly tailored because the State's "compelling interest of eliminating discrimination . . . could be substantially frustrated" by an exemption for sincerely held religious beliefs").  "[W]hen [Plaintiffs] entered into the economic arena and began trafficking in the market place, they have subjected themselves to the standards the legislature has prescribed not only for the benefit of prospective and existing employees, but also for the benefit of the citizens of the state as a whole in an effort to eliminate pernicious discrimination." *McClure*, 370 N.W.2d at 853

Because the MHRA survives strict scrutiny, it also withstands any lower level of scrutiny that may apply.[6]  *See O'Toole v. O'Connor*, 802 F.3d 783, 789 (6th Cir. 2015) (analyzing preliminary injunction motion, although the parties disagreed whether strict scrutiny applied, the court concluded that it did not matter because plaintiff did not demonstrate likelihood of success on merits if strict scrutiny was applied); *Alaskan Indep. Party v. Alaska*, 545 F.3d 1173, 1180 (9th Cir. 2008), *as amended* (Oct. 22, 2008) ("[W]e ultimately need not decide what level of scrutiny to apply, because Alaska's primary election law withstands even strict scrutiny."); *Adams v. Zenas Zelotes, Esq.*, 606 F.3d 34, 38 n.2 (2d Cir. 2010) (similar).

---

[6] For example, Plaintiffs do not argue that their business entails expressive conduct, and such have waived any such argument. *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 634 (8th Cir. 2007) (points not meaningfully argued in an opening brief are waived).  But if Plaintiffs had made such an argument, governmental regulation would be sufficiently justified. *U.S. v. O'Brien*, 391 U.S. 367, 377 (1968); *Rumsfeld*, 547 U.S. at 67-68 (concluding the law does not violate *O'Brien*, even if regarded as regulating expressive conduct); *Texas v. Johnson*, 491 U.S. 397, 407 (1989) (same); *see also R.A.V.*, 505 U.S. at 385 ("nonverbal expressive activity can be banned because of the action it entails, but not the ideas it expresses").

### B.    The MHRA Does Not Deny Plaintiffs' Rights of Free Association.

Plaintiffs also argue that applying the MHRA to Plaintiffs violates their First Amendment right to expressive association. *See* Am. Compl. at ¶¶ 228-44. The First Amendment protects the "right to associate for the purpose of speaking" and the government may not "restrict individuals' ability to join together and speak." *Rumsfeld*, 547 U.S. at 68.

Plaintiffs do not, however, have a First Amendment right to discriminate against customers. As the Supreme Court has explained: "[i]nvidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections." *Hishon*, 467 U.S. at 78 (denying law firm's First Amendment association challenge to Title VII, claiming a right to discriminate against a female lawyer) (quoting *Norwood v. Harrison*, 413 U.S. 455, 470 (1973)).

"To determine whether a group is protected by the First Amendment's expressive associational right, [the Court] must first determine whether a group engages in 'expressive association.'" *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000). Plaintiffs' expressive association challenge fails because Telescope Media is a business not organized for a specific expressive purpose. *See Gifford*, 137 A.D.3d at 42 (purpose of the rental hall business was to "mak[e] a profit through service contracts with customers" and was not expressive); *see also City of Dallas*, 490 U.S. at 24-25 (dancing at dance hall not "expressive association"). Indeed, "a speaker cannot erect a shield

against laws requiring access simply by asserting that mere association would impair its message." *Rumsfeld*, 547 U.S. at 69 (citation and quotation marks omitted).

Plaintiffs' association claim also fails because Plaintiffs are not being required to "associate" with customers in a constitutional sense. *Id.* (explaining that a school "associate[s] with military recruiters in the sense that they interact with them" but that they nonetheless are outsiders and not "members of the schools expressive association."); *City of Dallas*, 490 U.S. at 24-25 (gathering to dance may be "'associational' in common parlance" but is not the type protected by the First Amendment). Contrary to Plaintiffs' suggestion, Plaintiffs' business is different in kind than the Boy Scouts, *Boy Scouts of America*, 530 U.S. 640, the Jaycee's, *Jaycees*, 468 U.S. 609 (finding no constitutional violation), and the Rotary Club, *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) (finding no constitutional violation). Applying the MHRA to Plaintiffs does not "force [Telescope] to accept members it does not desire," *Rumsfeld,* 547 U.S. at 69, because Telescope does not have "members."

Regardless, as discussed *supra* at 14-16, the State's interest in ending discrimination is sufficiently compelling to warrant any incursion on Plaintiffs' alleged right to expressive association. *Jaycees*, 468 U.S. at 625-26; *see also Bd. of Dirs. of Rotary Int'l*, 481 U.S. at 549.[7]

---

[7] *Burwell v. Hobby Lobby* does not compel a different result because that case involved claims under the Religious Freedom Restoration Act ("RFRA") not a company's right, if any, to expressive association under the First Amendment. 134 S. Ct. 2751, 2761-2 (2014) (explaining that Congress amended RFRA "in an obvious effort to effect a complete separation from First Amendment case law"); *id.* at 2785 (declining "to reach (Footnote Continued on Next Page)

### C.   The MHRA Is Neutral and Generally Applicable And Therefore Does Not Violate the Free Exercise Clause.

The Free Exercise Clause of the First Amendment protects an individual's right to freedom of religion, but "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes.)'" *Emp't Div. v. Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990).

A valid law that is neutral and generally applicable need only be rationally related to a legitimate government interest, regardless of an "incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531, 533 (1993).  Indeed, "with respect to free exercise claims no less than free speech claims, your right to swing your arms ends just where the other man's nose begins."  *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2791 (2014) (Ginsberg, J., dissenting).

The requirement that laws be neutral and generally applicable are "interrelated." *Lukumi*, 508 U.S. at 531.  A law is not neutral only "if [i]ts object …. is to infringe upon or restrict practices because of their religious motivation." *Id.* at 533.  And a law is not generally applicable only if it "impose[s] burdens only on conduct motivated by religious

---

(Footnote Continued from Previous Page)
the First Amendment" free exercise claim); *see also Welch v. Brown*, 58 F. Supp. 3d 1079, 1087 n.4 (E.D. Cal. 2014), *aff'd*, 834 F.3d 1041 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Oct. 3, 2016), *cert. pet. filed* (16-845) (explaining *Hobby Lobby* did not apply because the case was not brought under RFRA).

belief" while allowing exceptions for secular conduct or for more favored religions.  *Id.* at 543.

MHRA is both neutral and generally applicable.  *McClure*, 370 N.W.2d at 851 ("Because the State of Minnesota is neither attempting to regulate religious beliefs or to single out any particular religious belief for adverse treatment, the Minnesota Human Rights Act is a facially-neutral regulation." (*citing Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972)).

The MHRA exists for the important purpose of protecting all of Minnesota's residents and visitors from discrimination based on a range of protected characteristics, including sexual orientation.  *See* Minn. Stat. §§ 363A.11, subd. 1(1); 363A.17(3). MHRA is neutral because it applies to all such discrimination, regardless of the underlying motive.  The MHRA is generally applicable for the same reason—it does not target religion or any particular religious belief, but instead prohibits discrimination and ensures that places of public accommodation and businesses treat all customers equally. *See* Minn. Stat. § 363A.11, subd. 1(1), 363A.17.

Cases considering similar anti-discrimination laws have consistently reached the same result.  *See Masterpiece Cakeshop Inc*., 370 P.3d 272 (denying argument that Free Exercise Clause allows baker to decline to make a cake for same-sex wedding in violation of anti-discrimination law); *Elane Photography*, 30-9 P.2d at 72-75 (same as to photographer); *Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274 (Alaska 1994) (landlord's religious belief did not entitle him to violate anti-discrimination law by refusing to rent to unmarried couple); *N. Coast  Women's Care Med. Grp. Inc. v. San*

*Diego Cnty*, 189 P.3d 959 (Cal. 2008) (doctors do not have right under Free Exercise Clause to refuse intrauterine insemination to same-sex couple in violation of state anti-discrimination statute).

Plaintiffs' arguments that the MHRA is not neutral and generally applicable all fail. First, Plaintiffs suggest that the MHRA's "neutrality is fundamentally undercut by the exception for "legitimate business purpose[s]." Pl's Mem. In Supp. of Mot. for P.I. at 27. The phrase "legitimate business purpose" is based on language commonly used in analyzing anti-discrimination statutes under the *McDonnell-Douglas* test, crafted by the United States Supreme Court. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Scott v. CSL Plasma, Inc.*, 151 F. Supp. 3d 961, 967 (D. Minn. 2015) (relying on *McDonnell-Douglas* analysis in evaluating business discrimination claim under Minn. Stat. § 363A.17); *Gold Star Taxi & Transp. Serv. v. Mall of Am. Co.*, 987 F. Supp. 741, 747 (D. Minn. 1997) (same); *Aase v. Wapiti Meadows Cmty. Techs. & Servs., Inc.*, 832 N.W.2d 852, 857 (Minn. App. 2013) (recognizing that a "legitimate business purposes" within the meaning of MHRA is analyzed using the second step of the *McDonnell-Douglas* test).

The MHRA, like other anti-discrimination statutes, prohibits discrimination on the basis of a protected status such as race, sexual orientation, gender, or religion, etc. But where an employer or business owner acts based on an independent and neutral reason unconnected to the person's protected status, they do not violate the statute. This framework is inherently neutral as to *why* a person discriminates, and Plaintiffs' suggestion that this well-established standard created by the United States Supreme Court

21

is vague and not neutral and generally applicable defies credulity.  *See also* Defs.' Mem. In Supp. of Mot. to Dismiss at 18-20.

Second, Plaintiffs' contention that the existence of certain exemptions to the MHRA suggests that it is not "generally applicable" is similarly without merit.  *See* Pls' Mem. In Supp. of Mot. for P.I. at 28.  For example, Plaintiffs' argument that the MHRA somehow infringes free exercise because it accommodates religious organizations and associations fails as a matter of law.  *See Hobbie v. Unemp't Appeal Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987) (stating that the Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices"); *Corp. of Presiding Bishop of Church of Christ of Latter Day-Saint v. Amos*, 483 U.S. 327 (1987) (holding that religious exemptions to Title VII do not violate the First Amendment); *see also, e.g., Elane Photography*, 309 P.2d at 74-75 (finding the New Mexico anti-discrimination statute neutral and generally applicable despite several religious and secular exemptions).  Exemptions accommodating religion simply are not proof that the law is targeting religion.

Likewise, limited exceptions to allow for, *inter alia*, gendered restrooms and gendered youth sports teams, do not suggest "a subtle departure[] from neutrality," a "religious gerrymander," or a "covert suppression of particular religious beliefs." *Lukumi*, 508 U.S. at 534.  They do not concern religion at all.  *Id.* at 535; *Elane Photography*, 309 P.3d at 74 (exceptions which do not suggest religiously motivated discrimination irrelevant to general applicability analysis).  Rather, they represent a narrow exception to legislation that prohibits discrimination by all who provide public

services and accommodations in the State of Minnesota.  The MHRA is a neutral and generally applicable law which seeks to protect third-parties from discrimination when seeking accommodations or services from Minnesota businesses.

Finally, as indicated *supra* at 14-16, the MHRA meets both a rational basis and strict scrutiny standard of review.  Plaintiffs incorrectly argue that the Court must apply an enhanced strict scrutiny analysis, citing *Gonzalez v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006) and *Hobby Lobby*, 134 S. Ct. at 2779. *See* Pls.' Mem. In Supp. Mot. for P.I. at 31.  In both of the cases cited by Plaintiffs, the Supreme Court very plainly explained that it was analyzing claims under the standard set by Congress in the Religious Freedom Restoration Act ("RFRA"), not the standard for a claim under the First Amendment of the United States Constitution.[8]  The Court expressly held that "the Constitution does not require judges to engage in a case-by-case assessment of the religious burdens imposed by facially constitutional laws."  *Gonzalez*, 546 U.S. at 424 (quoting *Smith*, 494 U.S. at 883-90).

Minnesota's interest in enabling all citizens to access public accommodations and services would nonetheless survive strict scrutiny.  *Supra* at 14-16.

**D.    Plaintiffs' Unconstitutional Conditions Claim Also Fails.**

Plaintiffs' unconstitutional conditions claim fails for at least two reasons.  First, there is no violation of the unconstitutional conditions doctrine because the MHRA does not infringe Plaintiffs' speech or otherwise violate the First Amendment. *Supra* at 8-16;

---

[8] RFRA does not apply to the States, *City of Boerne v. Flores*, 521 U.S. 507 (1997), and Plaintiffs have not tried to assert such a claim.

*see also Rumsfeld*, 547 U.S. at 59 (not an unconstitutional condition because the challenged law did not require law schools to say anything); *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 212 (2003); *Rust v. Sullivan*, 500 U.S. 173, 175 (1991); *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 545 (1983).

Second, Plaintiffs' unconstitutional conditions claim fails because Plaintiffs have not alleged the government has denied them a benefit. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (explaining that the government cannot condition the grant of a benefit on forfeiture of protected First Amendment speech). Paradigmatic examples of benefits under the unconstitutional conditions doctrine are government employment,[9] pre-existing commercial relationships (*i.e.*, contracts),[10] or limitations on receipt of government money.[11] Plaintiffs do not allege any government funding, contract or employment which they have been denied.[12]

### E. Plaintiffs' Claims Against the Attorney General Also Lack Jurisdiction.

---

[9] *Calvit v. Minneapolis Pub. Sch.*, 122 F.3d 1112, 1118 (8th Cir. 1997); *Barnes v. Bosley*, 745 F.2d 501, 503 (8th Cir. 1984); *Smith v. W. Memphis Sch. Dist.*, 635 F.2d 708, 710 (8th Cir. 1980).

[10] *Campion, Barrow & Assocs. of Illinois, Inc. v. City of Minneapolis*, 652 F. Supp. 2d 986, 993 (D. Minn. 2009).

[11] *Rust v. Sullivan*, 500 U.S. 173, 175 (1991).

[12] Plaintiffs cite no case supporting their suggestion that "the right to make a living in the occupation of one's choice, the right to run a business, and the right to sell speech" is sufficient to invoke the unconstitutional conditions doctrine. The cases cited by Plaintiffs—*Green v. McElroy*, 360 U.S. 474 (1959), and *Hobby Lobby*, 134 S. Ct. 2751— are not unconstitutional conditions cases. *See* Pls.' Mem. In Supp. of P.I. at 30.

Plaintiffs' request for an injunction against the Minnesota Attorney General also fails for lack of jurisdiction.

"The Eleventh Amendment establishes a general prohibition of suits in federal court by a citizen of a state against his state or an officer or agency of that state." *281 Care Comm. v. Arneson*, 638 F.3d 621 (8th Cir. 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court established a very limited exception to this rule allowing suit against a government official for prospective injunctive relief when two conditions are met: (1) the official "must have some connection with the enforcement" of the challenged statute; and (2) the official must "threaten and [be] about to commence proceedings" to enforce the statute.  "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Minn. Citizens Concerned for Life, Inc., v. Swanson*, Civ. No. 10-2938, 2011 WL 797462, at *3 (D. Minn. Mar. 1, 2011) (citations and quotations omitted).

Plaintiffs allege only that the Attorney General acts as the attorney for the Minnesota Department of Human Rights.  Am. Comp. ¶ at 29; *see also* Minn. Stat. 363A.32, subd. 1 (providing only that the attorney general is the "attorney for the department" and that matters may be referred "after a finding of probable cause" by the Commissioner).  Plaintiffs plead no facts suggesting that the Attorney General has "threaten[ed] or [is] about to commence proceedings" against them. *Ex Parte Young*, 209 U.S. at 156.

Seeking an injunction against the Attorney General because a state agency might in the future ask for representation is not permitted under the Eleventh Amendment.[13] *See, e.g.*, *Reproductive Health Services v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (where state officials have not asked Attorney General to take an action to enforce a statute, issuing injunction against the Attorney General "looks very much like the impermissible grant of federal court relief against the State . . . ."); *Advanced Auto Transp., Inc. v. Pawlenty*, No. CIV.10-159, 2010 WL 2265159, at *3 (D. Minn. Jun. 2, 2010) ("Nor is the mere fact that an attorney general has a duty to prosecute all actions in which a state is interested enough to make [her] a proper defendant in every such action.") (citing *Children's Healthcare is a Legal Duty, Inc. v. Deters,* 92 F.3d 1412, 1416 (6th Cir. 1996); *1st Westco Corp. v. Sch. Dist. of Philadelphia,* 6 F.3d 108, 113 (3d Cir. 1993); *Okpaboli v. Foster,* 244 F.3d 405, 416 (5th Cir. 2001); *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 331 (4th Cir. 2001); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979)); *see also Minn. Citizens Concerned for Life*, 2011 WL 797462, at *4 ("[C]onditional authority to prosecute an indictable offense at the

---

[13]   Because the Attorney General would be acting in a representation capacity on behalf of the Minnesota Department of Human Rights, injunctive relief against the Commissioner of Human Rights would provide Plaintiffs the full relief they seek in this case.  Regardless, for all the reasons stated herein, Plaintiffs have not shown that they are entitled to any injunctive relief against either Defendant.

Governor's request is insufficient to maintain the attorney general as a defendant in this action.").[14]

## II.   CONSIDERATION OF IRREPARABLE INJURY, RELATIVE HARMS, AND THE PUBLIC INTEREST WEIGH AGAINST GRANTING A PRELIMINARY INJUNCTION.

First, Plaintiffs' need for immediate relief is undercut by their own delay in bringing a motion for injunctive relief.  Plaintiffs have been in the videography business since 2008.  In Minnesota, the Legislature enacted a law recognizing same-sex marriage on August 1, 2013.  *See* Minn. Stat. § 517.01.  On June 26, 2015, the United States Supreme Court ruled that the United States Constitution provides same-sex couples a constitutional right to marry.  *Obergefell*, 135 S. Ct. 2584.  Plaintiffs filed an initial complaint in this case on December 6, 2016, Compl. [Doc. 1], but did not serve it on Defendants.  On January 13, 2017, Plaintiffs filed an Amended Complaint [Doc. 13] and Motion for Preliminary Injunction [Doc. 14].   Five days later, Plaintiffs served Defendants with the Amended Complaint and Motion.

Plaintiffs' delay in bringing this case and their motion weighs heavily against granting Plaintiffs' requested injunctive relief.  *See, e.g.*, *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999) (holding that plaintiff's delay in seeking preliminary injunction "belies any claim of irreparable injury pending trial," and recognizing that delay in seeking injunction, standing alone, may justify denying

---

[14] In addition to the infirmities in Plaintiffs' First Amendment claims, Plaintiffs claims also fail for the additional reasons identified in Defendants Memorandum in Support of Motion to Dismiss, including because the claims lack standing and are not ripe.  *See* Mem. In Supp. of Mot. to Dismiss at 4-7.

request); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, Civ. No. 09-1091, 2010 WL 2131007, at *1 (D. Minn. May 25, 2010) (Ericksen, J.) ("[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." (internal quotation marks and citations omitted)).

By contrast, the MHRA is a long-standing and duly enacted law of the State of the Minnesota. It is in the public interest that the laws of the State be enforced. *See, e.g., Planned Parenthood of Minn., N.D., S.D.*, 530 F.3d at 731 (recognizing the important public interests served by a "duly enacted state statute")

Furthermore, the risk of harm outweighs any alleged harm to Plaintiffs. As discussed *supra* at 14-16, the United States Supreme Court has already recognized the "unique evils" and "serious social and personal harms" caused by discrimination. *Jaycees*, 468 U.S. at 625, 28. As it relates specifically to sexual orientation, these concerns are borne out by the types of harms and stigmatizing injuries reported by the Minnesota Task Force, which the Legislature sought to remedy when it included sexual orientation as a protected class under the MHRA. *Supra* at 2-5 (citing reports that individuals were told "We don't want your kind here" by public accommodations). *See also Obergefell v. Hodges*, 135 S. Ct. 2584, 2596 (2015) (recognizing the history of opposition to homosexuality).

The injunction Plaintiffs seek is not in the public interest and the harm it would cause outweighs the harms alleged by Plaintiffs.

## CONCLUSION

For the reasons stated herein, Defendants Commissioner of the Minnesota Department of Human Rights Kevin Lindsey and Minnesota Attorney General Lori Swanson respectfully request the Court deny Plaintiffs' Motion for Preliminary Injunction.


Dated:  February 15, 2016                     Respectfully submitted,

                                              OFFICE OF THE ATTORNEY
                                              GENERAL
                                              State of Minnesota

                                              s/ **Alethea M. Huyser**
                                              Alethea M. Huyser
                                              Assistant Solicitor General
                                              Atty. Reg. No. 0389270

                                              Janine Kimble
                                              Assistant Attorney General
                                              Atty. Reg. No. 0392032

                                              Eric Brown
                                              Assistant Attorney General
                                              Atty. Reg. No. 0393078

                                              445 Minnesota Street, Suite 1100
                                              St. Paul, Minnesota 55101-2128
                                              (651) 757-1243 (Voice)
                                              (651) 282-5832 (Fax)
                                              alethea.huyser@ag.state.mn.us
                                              janine.kimble@ag.state.mn.us
                                              eric.brown@ag.state.mn.us

                                              ATTORNEY FOR DEFENDANTS