UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Telescope Media Group, a Minnesota
corporation, Carl Larsen and Angel
Larsen, the founders and owners of
Telescope Media Group,

Plaintiffs,

v.

Rebecca Lucero, in her official
capacity as Commissioner of the
Minnesota Department of Human
Rights and Keith Ellison, in his official
capacity as Attorney General of
Minnesota,

Defendants.

Civ. No. 16-CV-04094 (JRT-LIB)

**DEFENDANTS' ANSWER TO
PLAINTIFFS' FIRST AMENDED
VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

For their answer to Plaintiffs' First Amended Verified Complaint for Declaratory and Injunctive Relief ("Amended Complaint") (Doc. 13), Defendants state and allege as follows:

Unless expressly admitted or otherwise qualified, the Defendants deny each and every allegation in Plaintiffs' Amended Complaint.

1. Carl Larsen and Angel Larsen are the owners and operators of Telescope Media Group ("TMG"), a company that tells stories through film and media production.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

2. The Larsens are Christians who believe that God has called them to use their talents and their company to create media productions that honor God.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

3. The Larsens are deeply concerned that American culture is increasingly turning away from the historic, biblically-orthodox definition of marriage as a lifelong union of one man and one woman, and that more and more people are accepting the view that same-sex marriage is equivalent to one-man, one-woman marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

4. Because of their religious beliefs, and their belief in the power of film and media production to change hearts and minds, the Larsens want to use their talents and the expressive platform of TMG to celebrate and promote God's design for marriage as a lifelong union of one man and one woman.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

5. Specifically, the Larsens desire to counteract the current cultural narrative undermining the historic, biblically-orthodox definition of marriage by using their media production and filmmaking talents to tell stories of marriages between one man and one woman that magnify and honor God's design and purpose for marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

6. The Larsens would violate their religious beliefs about marriage by using their media production and filmmaking talents to produce a video promoting or communicating the idea that marriage can exist between anyone but one man and one woman.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

7. But Minnesota law forces the Larsens to produce videos promoting a conception of marriage that directly contradicts their religious beliefs if they produce videos promoting marriages between one man and one woman.

**ANSWER:** Answering the allegations in Paragraph 7 of the Amended Complaint, Defendants admit that it is Defendants' view that the Larsens would violate the Minnesota Human Rights Act if they offer wedding videography services to the public, but refuse to provide wedding videography services for same-sex couples. Defendants deny all remaining allegations.

8. Defendant Kevin Lindsey and those under his direction at the Minnesota Department of Human Rights, have repeatedly stated that private businesses violate the Minnesota Human Rights Act (Minnesota Statutes Chapter 363) if they decline to create expressive wedding-related services celebrating same sex weddings.

**ANSWER:** Answering the allegations in Paragraph 8 of the Amended Complaint, Defendants admit that former Commissioner Lindsey and the Minnesota Department of Human Rights have stated multiple times their belief that a business would violate the Minnesota Human Rights Act if they offer wedding services to the public, but refuse to provide wedding services for same-sex couples. Defendants deny all remaining allegations.

9. According to Commissioner Lindsey and his agents at the Minnesota Department of Human Rights, Minnesota law requires business owners, like the Larsens who produce videos telling the story of marriages between one man and one woman, to also produce videos celebrating marriages between two men or two women, and to contract in a way to celebrate these marriages. *See* Minn. Stat. Ann. § 363A.11(1) and § 363A.17(3).

**ANSWER:** Answering the allegations in Paragraph 9 of the Amended Complaint, Defendants admit that it is Defendants' view that the business owners would violate the

3

Minnesota Human Rights Act if they offer wedding videography services to the public, but refuse to provide wedding videography services for same-sex couples. Defendants answer that the terms "produce," celebrating," and "celebrate" are vague and undefined and therefore impossible to answer. Defendants deny all remaining allegations.

10. Commissioner Lindsey investigates charges that a business has violated the Minnesota Human Rights Act, and, if he finds probable cause, has the matter litigated against the business, usually by Attorney General Swanson and her attorneys.

**ANSWER:** Answering the allegations in Paragraph 10 of the Amended Complaint, Defendants admit that Commissioner Lucero has authority to investigate whether a business has violated the Minnesota Human Rights Act, and if she finds probable cause, may request that the Attorney General's Office initiate litigation against the business. *See* Minn. Stat. § 363A.32. Defendants deny all remaining allegations.

11. Commissioner Lindsey may also himself initiate a charge of discrimination whenever he has "reason to believe that a person is engaging in an unfair discriminatory practice." Minn. Stat. Ann. § 363A.28(2).

**ANSWER:** Answering paragraph 11 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, the Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

12. If the Larsens were to convey their desired messages about marriage, and decline to convey messages that contradict their religious views, they would face costly and onerous investigations and prosecutions by Commissioner Lindsey and Attorney General Swanson, and their agents, that could result in the payment of a civil penalty to the state, as well as treble compensatory damages and punitive damages up to $25,000 to the aggrieved party. Minn. Stat. Ann. § 363A.29(4).

4

**ANSWER:** Answering paragraph 12 of the Amended Complaint, the allegations regarding "a civil penalty," "treble compensatory damages and punitive damages" contain legal conclusions to which no reply is necessary. To the extent a response is required, the Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent. Defendants deny all remaining allegations.

13. In addition, if the State finds the Plaintiffs liable for discrimination under Minn. Stat. Ann. § 363A.11(1), they "shall be guilty of a misdemeanor," a criminal offense. Minn. Stat. Ann. § 363A.30(4).

**ANSWER:** Answering paragraph 13 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, the Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

14. Under Minnesota law, a misdemeanor is punishable by a fine of up to $1,000, up to 90 days in jail, or both. Minn. Stat. Ann. § 609.02(3).

**ANSWER:** Answering paragraph 14 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, the Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

15. Thus, solely because of Minnesota law, the Larsens are refraining from exercising their First Amendment right to publicly promote their cinematic, story-telling services for weddings and to film and tell stories that promote and magnify the historic, biblically-orthodox definition of marriage as a union between one man and one woman.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

16. To restore their constitutional freedoms, the Larsens ask this Court to enjoin Defendants from applying Minnesota Statutes Annotated §363A.11(1) and §363A.17(3) to their expressive activity, and to declare that those provisions violate their First and Fourteenth Amendment rights.

**ANSWER:** Answering the allegations in Paragraph 16 of the Amended Complaint, Defendants state that they are Plaintiffs' own characterization of their lawsuit and the relief they seek, and no response is necessary. To the extent a response is necessary, Defendants deny the allegations.

17. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

**ANSWER:** Answering paragraph 17 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

18. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

**ANSWER:** Answering paragraph 18 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

19. This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201-02 and Federal Rule of Civil Procedure 57; the requested injunctive relief

6

under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

**ANSWER:** Answering paragraph 19 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all events giving rise to the claims detailed here occurred within the District of Minnesota and all Defendants reside in the District of Minnesota.

**ANSWER:** Answering paragraph 20 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

21. Plaintiffs Carl Larsen and Angel Larsen are Christians who base their beliefs on the Bible.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

22. Carl Larsen and Angel Larsen are married to each other. They are both residents of the State of Minnesota and citizens of the United States of America.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

23. Both of them are the founders and owners of Telescope Media Group, Inc.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

24. Telescope Media Group, Inc. is a for-profit corporation organized under Minnesota law.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

25. TMG's principal place of business is located in Minnesota.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

26. Kevin Lindsey is the Commissioner of the Minnesota Department of Human Rights, as established by Minn. Stat. Ann. § 363A.05(1) and granted powers under Minn. Stat. Ann. § 363A.06, including the authority to "issue complaints, receive and investigate charges alleging unfair discriminatory practices, and determine whether or not probable cause exists for hearing." Minn. Stat. Ann. § 363A.06(8).

**ANSWER:** Answering paragraph 26 of the Amended Complaint, Defendants admit that Rebecca Lucero is the Commissioner of the Minnesota Department of Human Rights.  The remaining allegations contain legal conclusions to which no reply is necessary.  To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

27. Commissioner Lindsay may also "issue a charge" for a perceived violation of the Minnesota Human Rights Act without having received a charge from an aggrieved party. Minn. Stat. Ann. § 363A.28(2).

**ANSWER:** Answering paragraph 27 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

8

28. Commissioner Lindsey is named as a defendant in his official capacity.

**ANSWER:** Defendants admit that Plaintiffs have sued Commissioner Lucero in her official capacity.

29. Lori Swanson is the Attorney General of Minnesota. Attorney General Swanson is the attorney for the Minnesota Department of Human Rights. Minn. Stat. Ann. § 363A.32(1).

**ANSWER:** Defendants admit that Keith Ellison is the Attorney General of Minnesota. The remaining allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

30. Attorney General Swanson is named as a defendant in her official capacity.

**ANSWER:** Defendants admit that Plaintiffs have sued Attorney General Ellison in his official capacity.

31. The Defendants reside in the District of Minnesota.

**ANSWER:** Defendants admit the allegations in paragraph 31 of the Amended Complaint.

32. Minnesota's Human Rights Act ("MHRA") makes it illegal "to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race, color, creed, religion, disability, national origin, marital status, sexual orientation, or sex." Minn. Stat. Ann. § 363A.11(1).

**ANSWER:** Answering paragraph 32 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is

required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

33. The MHRA defines a "place of public accommodation" as "a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public." Minn. Stat. Ann. § 363A.03(34).

**ANSWER:** Answering paragraph 33 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

34. The MHRA also makes it illegal for businesses "engaged in a trade or business or in the provision of a service" to "intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of a person's race, national origin, color, sex, sexual orientation, or disability, unless the alleged refusal or discrimination is because of a legitimate business purpose." Minn. Stat. Ann. § 363A.17(3).

**ANSWER:** Answering paragraph 34 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

35. Minnesota statute § 363A.17(3) provides individualized exemptions from prohibited forms of discrimination for "legitimate business purpose[s]."

**ANSWER:** Answering paragraph 35 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

10

36. The MHRA does not define "legitimate business purpose."

**ANSWER:** Answering paragraph 36 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

37. The MHRA does not include any guidelines or criteria for Defendants to abide by in applying the "legitimate business purpose" exemption.

**ANSWER:** Answering paragraph 37 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

38. The MHRA also contains several other pertinent exemptions.

**ANSWER:** Answering paragraph 38 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

39. For example, Minnesota Statute Annotated § 363A.26 states that nothing in the MHRA, including § 363A.11(1) and § 363A.17(3), prohibits any "religious association, religious corporation, or religious society that is not organized for private profit" from "taking any action with respect to education, employment, housing and real property, or use of facilities" in "matters relating to sexual orientation." Minn. Stat. Ann. § 363A.26.

**ANSWER:** Answering paragraph 39 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

40. In addition, Minnesota statute § 363A.24 states that § 363A.11 as it relates to sex "shall not apply to such facilities as restrooms, locker rooms, and other similar places."

**ANSWER:** Answering paragraph 40 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

41. Minnesota statute § 363A.24 further states that the provisions of § 363A.11 "do not apply to employees or volunteers of a nonpublic service organization whose primary function is providing occasional services to minors, such as youth sports organizations, scouting organizations, boys' or girls' clubs, programs providing friends, counselors, or role models for minors, youth theater, dance, music or artistic organizations, agricultural organizations for minors, and other youth organizations, with respect to qualifications based on sexual orientation."

**ANSWER:** Answering paragraph 41 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

42. If Commissioner Lindsey or his agents become aware of an alleged violation of the MHRA, they will investigate the alleged violation.

**ANSWER:** Answering paragraph 42 of the Amended Complaint, Defendants admit that the Minnesota Department of Human Rights has the authority to investigate alleged violations of the MHRA. Defendants deny all remaining allegations.

43. Commissioner Lindsey has the authority to use Department officials as "testers" to investigate charges of discrimination.

**ANSWER:** Answering paragraph 43 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants admit.

44. These "testers" present themselves to the business as prospective clients to test whether the business is violating the law.

**ANSWER:** Answering paragraph 44 of the Amended Complaint, Defendants admit that "testers" may present themselves to the business as prospective clients to test whether the business is violating the law.

45. Defendant Lindsey used a tester to investigate a charge of sexual orientation discrimination against a wedding venue that had allegedly declined to host a same-sex wedding.

**ANSWER:** Defendants admit the allegations in paragraph 45 of the Amended Complaint.

46. The tester posed as part of a same-sex couple seeking services for their wedding.

**ANSWER:** Answering Paragraph 46 of the Amended Complaint, Defendants answer that as part of the investigation of a charge of sexual-orientation discrimination against a wedding venue that had allegedly declined to host a wedding between a same-sex couple, "the Department posed as a potential customer." Defendants deny all remaining allegations.

47. Defendants relied heavily on the interaction between the tester and the business owner in determining there was probable cause to find that the business violated the MHRA.

**ANSWER:** Answering Paragraph 47 of the Amended Complaint, Defendants answer that MDHR evaluated all available facts, including but not limited to the

interaction between the "tester" and the business owner, to conclude there was probable cause to find that the business violated the MHRA.  Defendants deny all remaining allegations.

48. If Defendants conclude from their investigation that a business has violated the MHRA, Defendants will use their authority under MHRA to prosecute the violation.

**ANSWER:** Answering the allegations in paragraph 48 of the Amended Complaint, Defendants answer that if MDHR concludes that a business has violated the MHRA, they have the authority to initiate an enforcement action.  Defendants deny all remaining allegations.

49. The Commissioner's power under the MHRA includes the ability to investigate a charge alleging that an individual or business engaged in illegal discrimination under the Minnesota Human Rights Act. Minn. Stat. Ann. § 363.06(8).

**ANSWER:** Answering paragraph 49 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

50. The Commissioner may issue a charge sua sponte without having received a charge of discrimination from a third party. Minn. Stat. Ann. § 363A.28(2) ("Whenever the commissioner has reason to believe that a person is engaging in an unfair discriminatory practice, the commissioner may issue a charge stating in statutory language an alleged violation of subdivision 10 and sections 363A.08 to 363A.19.").

**ANSWER:** Answering paragraph 50 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

14

51. The Commissioner's power under the MHRA includes the ability to determine whether probable cause exists for a charge of discrimination. Minn. Stat. Ann. § 363.06(8).

**ANSWER:** Answering paragraph 51 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

52. The Commissioner's power under the MHRA includes the ability to subject those accused to administrative hearings regarding charges of discrimination. Minn. Stat. Ann. § 363A.06(9); Minn. Stat. Ann. § 363A.29(1).

**ANSWER:** Answering paragraph 52 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

53. The Commissioner's power under the MHRA includes the ability to issue subpoenas when evaluating charges of discrimination. Minn. Stat. Ann. § 363A.06(9).

**ANSWER:** Answering paragraph 53 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

54. The Commissioner's power under the MHRA includes the ability to compel mediation regarding charges of discrimination. Minn. Stat. Ann. § 363A.06(10).

**ANSWER:** Answering paragraph 54 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is

required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

55. The Commissioner's power under the MHRA also includes the ability to issue notices of a right to sue to those alleging a violation of the MHRA. Minn. Stat. Ann. § 363A.28(6).

**ANSWER:** Answering paragraph 55 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

56. The Commissioner's power under the MHRA includes the ability to file a complaint in state district court to determine whether a business or public accommodation engaged in a practice that violates the MHRA. Minn. Stat. Ann. § 363A.33(1).

**ANSWER:** Answering paragraph 56 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

57. If Commissioner Lindsey determines to sue a business for discrimination, he turns the case over to Attorney General Swanson and her agents, who then litigate the discrimination case against the business. Minn. Stat. Ann. § 363A.32.

**ANSWER:** Answering paragraph 57 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

58. If the State finds a business liable for discrimination under Minn. Stat. Ann. § 363A.11(1), they "shall be guilty of a misdemeanor," a criminal offense. Minn. Stat. Ann. § 363A.30(4).

**ANSWER:** Answering paragraph 58 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

59. Under Minnesota law, a misdemeanor is punishable by a fine of up to $1,000, up to 90 days in jail, or both. Minn. Stat. Ann. § 609.02(3).

**ANSWER:** Answering paragraph 59 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

60. Defendants interpret the MHRA's prohibition on sexual orientation discrimination as prohibiting businesses from declining to provide services celebrating same-sex marriage because of the business owner's political, moral, social, or religious objections to same-sex marriage.

**ANSWER:** Answering the allegations in Paragraph 60 of the Amended Complaint, Defendants admit that it is Defendants' view that the Larsens would violate the Minnesota Human Rights Act if they offer wedding videography services to the public, but refuse to provide wedding videography services for same-sex couples. Defendants deny all remaining allegations.

61. The website of the Minnesota Department of Human Rights, in a section dealing with "Minnesota's Same-Sex Marriage Law," which went into effect August 1, 2013, states in part:

> The law does not exempt individuals, businesses, nonprofits, or the secular business activities of religious entities from non-discrimination laws based on religious beliefs regarding same-sex marriage.

Therefore, a business that provides wedding services such as cake decorating, wedding planning or catering services may not deny services to a same-sex couple based on their sexual orientation.

To do so would violate protections for sexual orientation laid out in the Minnesota Human Rights Act. The individuals denied services could file a claim with the Minnesota Department of Human Rights against the entity that discriminated against them.

MINNESOTA DEP'T OF HUMAN RIGHTS, *Minnesota's Same-Sex Marriage Law,* https://mn.gov/mdhr/yourrights/who-is-protected/sexual-orientation/same-sex-marriage/ (last visited Jan. 10, 2017).

**ANSWER:** Answering paragraph 61 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

62. On June 28, 2013, the Minnesota Department of Human Rights issued a press release entitled, "MDHR Offers Toolkit on Minnesota's New Same Sex Marriage Law." The press release states in part:

However, the law does not exempt individuals, businesses, nonprofits or the secular business activities of religious entities from non-discrimination laws based on religious beliefs regarding same-sex marriage. Therefore, a business that provides wedding services such as cake decorating, wedding planning or catering services may not deny services to a same-sex couple based on their sexual orientation.

MINNESOTA DEP'T OF HUMAN RIGHTS, *MDHR Offers Toolkit on Minnesota's New Same Sex Marriage Law,* http://mn.gov/mdhr/news-community/news-releases/news-releases.jsp?id=1061-242752 (last visited Jan. 10, 2017).

**ANSWER:** Answering paragraph 62 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

63. The Minnesota Department of Human Rights publishes on its website, "Public Accommodations FAQs," which state in part:

**Can a business owner refuse to provide services to me for my same-sex wedding?**

No. Denying commercial activity or refusing to enter into a commercial contract with someone on the basis of their sexual orientation has been against the law in Minnesota for more than 20 years under the Minnesota

Human Rights Act. A business that provides wedding services such as cake decorating, wedding planning or services may not deny its services to a same-sex couple. Individuals denied any of the above services can file a charge with the Minnesota Department of Human Rights.

MINNESOTA DEP'T OF HUMAN RIGHTS, *Public Accommodations FAQs,* https://mn.gov/mdhr/yourrights/what-is-protected/public-accomodations/pubaccom-faq.jsp (last visited Jan. 10, 2017).

**ANSWER:** Answering paragraph 63 of the Amended Complaint, Defendants state

that the website speaks for itself and denies the allegations to the extent inconsistent.

64. On its YouTube channel, https://www.youtube.com/user/mnhumanrights, the Minnesota Department of Human Rights published a video of Commissioner Lindsey speaking about Minnesota law and same-sex marriage. In the video, https://www.youtube.com/watch?v=rVoyfrN6DMM, Commissioner Lindsey says:

On May 14, 2013, Governor Dayton signed a bill into law legalizing same sex marriage in the State of Minnesota. What that means is that beginning on August 1 [2013], when the law goes into effect, two individuals of the same gender can become lawfully wedded in the State of Minnesota.

….

Let me take one more moment though and explain something else as it relates to some of the comments when we were going around the state having conversations with various Minnesotans about the impact of this potential new law. And that is this: It has been the case in the State of Minnesota since 1993, under Minnesota law, to prohibit discrimination on the basis of sexual orientation. So that means that businesses that are engaged in commercial enterprise, such as cake making, photography, uh, wedding hall planning, they cannot discriminate against an individual on the basis of their sexual orientation. So, that we're all clear, nothing has changed as it relates to those prohibitions under the law. Denying commercial activity, or denying entering into a commercial contract with someone on the basis of their sexual orientation has been against the law and has been prohibited in Minnesota since 1993, and it continues going forward…. (emphasis added).

Kevin Lindsey, *Commissioner Lindsey on Same Sex Marriage,* YOUTUBE (May 14, 2013), https://www.youtube.com/watch?v=rVoyfrN6DMM.

**ANSWER:** Answering paragraph 64 of the Amended Complaint, Defendants state

that the video speaks for itself and denies the allegations to the extent inconsistent.

65. Defendants have publicly taken this same position in official proceedings.

**ANSWER:** Answering paragraph 65 of the Amended Complaint, Defendants state

that the allegations are too vague to respond to, and therefore Defendant denies.

66. On August 22, 2014, the Minnesota Department of Human Rights announced a settlement against a "Little Falls wedding venue that had refused to rent to [a same sex couple] a few months earlier." The name of the company sued by the Department was Rice Creek Hunting and Recreation, Inc.

**ANSWER:** Defendants admit the allegations in Paragraph 66, except to deny that

the company was "sued by the Department."

67. This case was the "Minnesota Department of Human Rights' first same-sex wedding case involving discrimination in public accommodation based on sexual orientation since same-sex marriage was legalized on Aug. 1, 2013," according to the press release issued by the Minnesota Department of Human Rights. MINNESOTA DEP'T OF HUMAN RIGHTS, *MDHR Negotiates Settlement Agreement with Same-Sex Couple, Wedding Venue That Denied Service,* http://mn.gov/mdhr/news-community/case-histories/case-spotlight/?id=1061-242750 (last visited Jan. 10, 2017).

**ANSWER:** Answering paragraph 64 of the Amended Complaint, Defendants state

that the website speaks for itself and denies the allegations to the extent inconsistent.

68. Commissioner Lindsey stated that the case "serves as a reminder that businesses may not deny services based on a person's sexual orientation, . . . which is prohibited by the Minnesota Human Rights Act," according to the press release.

**ANSWER:** Answering paragraph 68 of the Amended Complaint, Defendants state

that the website speaks for itself and denies the allegations to the extent inconsistent.

69. The Minnesota Department of Human Rights also stated in that press release the following:

> While the same-sex law passed by the Legislature in 2013 provides specific exemptions for religious entities from taking part in the solemnization of same-sex marriages, it does not exempt individuals, businesses, nonprofits, or the secular business activities of religious entities from non-

discrimination laws based on religious beliefs regarding same-sex marriage. (emphasis added)

**ANSWER:** Answering paragraph 69 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

70. The Minnesota Department of Human Rights used a tester in this case who pretended to be seeking a venue for a same-sex wedding.

**ANSWER:** Answering Paragraph 70 of the Amended Complaint, Defendants answer that as part of the investigation "the Department posed as a potential customer." Defendants deny all remaining allegations.

71. According to the press release referenced above, "[a]s part of the Minnesota Human Rights investigation, the Department posed as a potential customer. The conversation between the hunting lodge representative and the test caller was very similar to [the complainant's] conversation."

**ANSWER:** Answering paragraph 71 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

72. Carl and Angel Larsen are Bible-believing Christians who live in St. Cloud, Minnesota.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

73. The Larsen's religious beliefs are central to their identity, their understanding of existence, and their conception of their personal dignity and autonomy.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

74. As Christians, the Larsens believe that their lives are not their own, but that their lives belong to God (1 Corinthians 6:19-20).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

75. The Larsens believe that everything they do—personally and professionally—should be done in a manner that glorifies God. (1 Corinthians 10:31; 2 Corinthians 5:15; Colossians 3:17; 1 Peter 4:11.)

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

76. The Larsens believe that one day they will give an account to God regarding the choices they made in life, both good and bad. (2 Corinthians 5:10; Romans 14:12.)

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

77. The Larsens believe that God instructs Christians to steward the gifts He has given them in a way that glorifies and honors Him. (1 Peter 4:10-11.)

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

78. Therefore, the Larsens believe that they must use the creative talents God has given to them in a manner that honors God and that they may not use them in a way that dishonors God.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

79. The Larsens are the sole owners of TMG, a company they started in 2008 and formally incorporated in Minnesota on November 13, 2012.

**ANSWER:** Defendants admit, on information and belief, and based on the information publicly available on the Minnesota Secretary of State website, https://mblsportal.sos.state.mn.us/Business/Search, that Telescope Media Group is an

inactive Minn. Stat. Ch. 333 assumed name, which was initially filed in Minnesota on March 19, 2008. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in that paragraph and accordingly deny them.

80. The Larsens offer a wide variety of video and media production related services to the public, including live-event production, commercials, short films, short documentaries, audio/visual messages in various formats, motion graphics, and more.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

81. As a business in Minnesota that offers its services to the general public, TMG is a "place of public accommodation" subject to MHRA, Minn. Stat. Ann. § 363A.03(34), and specifically to § 363A.11(1).

**ANSWER:** Defendants admit the allegations in paragraph 81 of the Amended Complaint.

82. As a business that is in "engaged in a trade or business or in the provision of a service," and that enters into contracts with its clients to collaboratively create video productions, TMG is also subject to Minn. Stat. Ann. § 363A.17(3), which governs discrimination in contracts.

**ANSWER:** Answering paragraph 81 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants admit that businesses that offer services to the general public are subject to Minn. Stat. § 363A.17, subd. 3. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations that TMG is " 'engaged in a trade or business or in the provision of a service,' and [] enters into contracts with its clients to collaboratively create video productions," and accordingly deny them.

83. As stated on its website, "Telescope Media Group exists to glorify God through top quality media production." *See* TELESCOPE MEDIA GROUP, https://telescopemediagroup.net/about/ (last visited Jan. 10, 2017).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

84. As the Larsens explain on TMG's website, they decided to use the word "Telescope" in their company's name because of Christian theologian John Piper's observation that "God created the universe to magnify His glory the way a telescope magnifies stars."

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

85. The Larsens proclaim on TMG's website that their aim is "to make God look more like He really is through our lives, business, and actions."

**ANSWER:** Answering paragraph 85 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

86. The Larsens' specialties are extensive and varied.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

87. Carl Larsen is the chief storyteller of TMG and of its creations, and plays roles such as artistic director, producer, cinematographer, animator, scriptwriter, and editor.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

88. The Larsens use their unique vision and skills to tell stories in effective, appealing, and impactful ways.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

89. To accomplish this mission, the Larsens work closely with their clients to fully understand them, their goals, and their reasons for requesting the Larsens' creative services so that they can tell stories and convey messages in their productions that satisfy their clients while also honoring their religious beliefs.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

90. Persons and entities that seek the Larsens' services often have only a very basic idea of the video production they would like them to produce.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

91. While the video productions the Larsens produce are often collaborative endeavors between the Larsens and their clients, their clients rely heavily on Carl's unique skill to identify and tell compelling stories through video and film productions and give him substantial freedom to craft and tell that story.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

92. Because the Larsens believe that every human is made in the image of God and is loved by God, they gladly work with all people—regardless of their race, sexual orientation, sex, religious beliefs, or any other classification. (Gen. 1:27.)

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

93. The Larsens simply desire to use their unique storytelling and promotional talents to convey messages that promote aspects of their sincerely-held religious beliefs, or that at least are not inconsistent with them.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

94. It is standard practice for the owners of video and film production companies to decline to produce videos that contain or promote messages that the owners do not want to support or that violate or compromise their beliefs in some way.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

95. Unless the Larsens believe they can use their story-telling talents and editorial control to convey only messages they are comfortable conveying given their religious beliefs, they will respectfully decline requests for their creative services.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

96. Among other things, the Larsens will decline any request to design and create media productions that: contradict biblical truth; promote sexual immorality; support the destruction of unborn children; promote racism or racial division; incite violence; degrade women; or promote any conception of marriage other than as a lifelong institution between one man and one woman.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

97. If the Larsens determine that accepting a project would require them to promote messages that contradict or are inconsistent with their beliefs, they endeavor to refer the prospective client to another artistic specialist who can assist them.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

98. The Larsens receive more requests than they have the capacity to complete, given their desired size, so even when they are not asked to tell a story that violates their beliefs, they decline to tell certain stories simply so they have the time to create and communicate stories they find more interesting, inspiring, or a better creative fit.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

99. Some of the Larsens' work involves storytelling for live event productions.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

100. Unlike stationary security cameras capturing footage reflecting events that occurred, the Larsens influence the overarching story of the events, the story portrayed by the events, the media surrounding the events, and how the events are remembered.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

101. For example, in designing and creating engaging media to promote events, the Larsens express the message, takeaway, or story that people should seek and find when they attend the events.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

102. The Larsens also frequently design and create media content—such as short films—for use at the live events themselves, thereby designing and telling the expressive narrative and message that captivates and moves the audience.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

103. At many live events, the Larsens also choose which of the many facets of the event to emphasize on the large screens at the venue and in live streaming to a broader audience through real-time editorial judgments about the focus, scope, and positioning of their cameras and the camera feeds to use.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

104. After events, the Larsens often have an opportunity to edit, design and create media content telling a story about the event, choosing which aspects of the events to emphasize and exclude so that they convey the story in a compelling way that is consistent with their religious beliefs.

27

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

105. In reviewing footage after events to compose media about the event, the Larsens make numerous editorial judgments from a vast amount of content—sometimes captured from over a dozen videographers simultaneously—to convey their intended message.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

106. The Larsens' editorial judgments in crafting and conveying a story often include decisions about what events to take on, what video content to use, what audio content to use, what text to use in a video, the order in which to present content, whether to use voiceovers, what music—if any—to use as an audio track, whether to include animation, whether to include visual effects, whether to use still shots within a video, lighting and color adjustments, and audio mixing and mastering.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

107. Each of these decisions affects the story that is produced.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

108. Outside of the live-events context, some of the Larsens' work involves promotional media for companies and organizations.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

109. Consistent with its mission, the Larsens use their creative expertise and vision to promote messages that promote, or at least are not inconsistent with, their religious beliefs through their multimedia content.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

110. For example, the Larsens have created original content for Billy Graham Evangelistic Association, Desiring God (a ministry of John Piper), Secret Church (a ministry of David Platt), Lifelight (the largest outdoor Christian music festival in the nation), Multiply Movement, and other Christian ministries.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

111. In addition to creating original media content expressing certain messages, the Larsens sometimes promote that media online and through other mediums.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

112. The Larsens promote their original media content online and through other mediums to reach and impact the broadest number of people possible with their message and the stories they tell.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

113. The Larsens are saddened and concerned about American culture's current views about marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

114. The Larsens believe that many see marriage as a punch line for jokes, a means for personal gratification, an arrangement of convenience, or a method of achieving social status.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

115. The Larsens are also deeply troubled by the Supreme Court's *Obergefell v. Hodges* decision, which held that there is a constitutional right to same-sex marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

116. The Larsens disagree with the view and message that same-sex marriage is morally equivalent to the historic, biblically-orthodox definition of marriage as between one man and one woman.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

117. This view and message about marriage is prevalent in our society and culture today.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

118. This view and message about marriage is being promoted by powerful cultural and political forces, including federal governmental officials (up to and including the president), Fortune 500 companies, and media production companies through movies, commercials, short films, and more.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

119. The Larsens believe that marriage is a God-ordained, lifelong, sacrificial covenant between one man and one woman with profound spiritual and societal implications.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

120. Carl Larsen has even officiated two marriages because of his passion to see strong marriages form and flourish.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

121. Because of their passion for strong marriages, Carl and Angel also provided marriage counseling and mentorship to the couples Carl married, and regularly provide marriage advice and mentoring to other married couples as well.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

122. The Larsens desire to counteract the current powerful cultural narrative undermining the historic, biblically-orthodox definition of marriage as between one man and one woman by magnifying God's beautiful design and purpose for marriage through their creative storytelling and promotional talents.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

123. Films and other media productions are an important medium for communicating ideas.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

124. Historically, films and other media productions have been used by their creators to challenge accepted notions of politics, religion, and morality.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

125. The Larsens know the power of film —of great story-telling —to change hearts and minds, and they want to impact religious, social, and cultural views about marriage by creating compelling stories celebrating God's design for the institution.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

126. In all of its film and media productions, the Larsens use their clients and their events as the raw material to tell the stories and express the messages the Larsens seek to convey.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

127. The Larsens cannot convey the message they desire in their film productions if they do not have the freedom to choose the underlying subject matter depicted in the film production.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

128. In other words, the Larsens' clients and events are akin to the paint for a portrait artist and the clay for a potter—each affects the creative output and is necessary for it, but the artist crafts the final masterpiece.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

129. Thus, to convey its religiously-motivated messages about marriage, the Larsens wish to, and are ready to, use their filmmaking skills to highlight and portray healthy stories of sacrificial love and commitment between a man and a woman to counter current cultural narratives about marriage with which they disagree.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

130. The Larsens desire to use their filmmaking skills to capture the background stories of the couples' love leading to commitment, the joy of the couple and the sacredness of their sacrificial vows at the altar, and even the following chapters of the couples' lives to convey a message about marriage that brings hope and clarity to society about God's design and purpose for marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

131. When an engaged couple asks the Larsens to help them celebrate their marriage, the Larsens want to tell a story of their love and commitment that changes hearts and minds.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

132. The Larsens wish to do so, for example, by directing and compiling a cinematic piece for use at the wedding that tells a story of love, commitment, and vision for the future that encourages the audience to see marriage as the beautiful covenant God designed it to be.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

133. The Larsens also plan to perform on-site editing to weave a story using the perfect clips of the wedding ceremony video, captured audio, and music and then show that film at the wedding reception to enhance the wedding celebration and ensure that those in attendance go home dwelling on the aspects of marriage that the Larsens wish to proclaim and reinforce.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

134. The Larsens also desire to use their artistic vision and talents to capture each aspect of the wedding that furthers their desired narrative and then apply their editing and storytelling skills to create a lengthier wedding film that will strengthen the subject couple's marriage and affect the viewers' conception of marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

135. The Larsens also desire to not just create these cinematic stories proclaiming God's design for marriage for the couple getting married and those celebrating with them, but to also use their marketing talents to promote these films to a broader audience to achieve maximum cultural impact.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

136. For example, the Larsens will publish the wedding videos they create on the TMG website and through their other internet mediums, like Twitter and Facebook, to ensure that the general public can see the Larsens' marriage-related productions.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

137. These are just a few examples of the Larsens' plan to affect the cultural narrative regarding marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

138. Public promotion of the wedding videos as described in ¶¶ 135-36 will be mandatory in every wedding videography contract into which the Larsens enter.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

139. Other than the public promotion of the wedding videos the Larsens produce, clients will be able to select one or more of the additional wedding-related services specified above.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

140. The Larsens have produced a marriage story teaser video solely to provide the Court an example of the type of wedding films they desire to create.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

141. A true and accurate copy of this marriage teaser story video is attached as Exhibit A to this Complaint.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

142. The approximately 1:20 film is solely a teaser video.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

143. The full cinematic film would be far longer and more comprehensive of the couple's relationship, story, and special day.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

144. It is not financially feasible for the Larsens to tell stories about marriage with the frequency and quality they desire if they cannot charge for their work.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

145. But the Larsens cannot offer their services to express their message about marriage in the manner described above because Minnesota has closed the marriage field to those with the Larsens' religious beliefs regarding marriage.

**ANSWER:** Defendants deny the allegations in Paragraph 145 of the Amended Complaint.

146. By requiring that the Larsens celebrate same-sex weddings if they celebrate weddings between one man and one woman, Minnesota denies to the Larsens the means to convey their creative, religiously-motivated message about God's design for marriage and compels the Larsens to express the precise message they wish to counter and with which they disagree.

**ANSWER:** Defendants deny the allegations in Paragraph 146 of the Amended Complaint.

147. Given the nature of the wedding industry and the fact that weddings are typically not open to the general public, the Larsens would not have access to and be able to capture weddings if couples did not hire them for their weddings.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

148. Not only would creating films celebrating a same-sex wedding express a message that Plaintiffs are unwilling to express, but it would also undercut the effectiveness of Plaintiffs' desired expression promoting marriage as a union between one man and one woman, harm Plaintiffs' reputation among their Christian clients and friends, and adversely impact Plaintiffs' ability to share additional biblical truths with others.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

149. Plaintiffs understand that it is very common to analogize opposition to same-sex marriage to opposition to interracial marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

150. Plaintiffs abhor opposition to interracial marriage and would gladly use their video production skills to tell the story of an interracial marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

151. Plaintiffs reject any argument that the Bible bars interracial marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

152. Plaintiffs believe that interracial marriage is entirely consistent with the Bible because it teaches that all humans are created in the image of God and that all humans in all ethnic groups are descendants of two people – Adam and Eve. (Gen. 1:27, 5:1-3, Acts 17:26.)

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

153. Plaintiffs simply hold to the historic and biblically-orthodox view that marriage is between one man and one woman, and desire to avoid communicating a contradictory message.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

154. Plaintiffs desire to immediately begin promoting the availability of their cinematic, story-telling services for weddings, and to immediately start providing those services.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

155. Specifically, Plaintiffs desire to announce their cinematic, story-telling services for weddings on TMG's website, at wedding expos—where vendors promote their wedding services to future brides, grooms, wedding advisors and others, and through other channels, such as popular wedding-planning websites like The Knot and Wedding Wire.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

156. For example, the Larsens desire to participate in the St. Cloud annual wedding expo scheduled for January 15, 2017. But they are unable to plan, prepare for, or participate in this wedding expo until they know whether they can operate in the wedding industry in accordance with their religious beliefs. The Larsens have put their planning and preparation for this expo on hold because the MHRA makes illegal what they desire to do and say.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

157. On their website and other promotional materials, Plaintiffs desire and intend to state that their religious beliefs require them to celebrate, promote, and tell the story of marriages between one man and one woman and prevent them from celebrating, promoting, and telling the story of any other type of marriage, including same-sex marriages.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

158. Specifically, the Larsens desire to include the following statement on their website announcing their cinematic, story-telling services for weddings and on other promotional materials for their wedding services:

Telescope Media Group exists to glorify God through top-quality media production. Because of TMG's owners' religious beliefs and expressive purposes, it cannot make films promoting any conception of marriage that contradicts its religious beliefs that marriage is between one man and one woman, including films celebrating same-sex marriages.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

159. Plaintiffs also desire to immediately start filming and telling marriage stories that conform to their religious beliefs so that they can impact the culture with powerful and compelling stories celebrating God's design for marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

160. Plaintiffs are refraining from promoting and providing their cinematic, story-telling services for weddings in the manner stated above because the MHRA prohibits them from doing so.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

161. Plaintiffs know that violating MHRA carries heavy penalties and is a mandatory misdemeanor—which is punishable by criminal fines and even jail time.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

162. Plaintiffs are aware of the statements by Commissioner Lindsey and others on the website of the Minnesota Department of Human Rights and thus understand the

Defendants stated intent to apply the MHRA to expressive wedding service providers like the Larsens, which would require them to create media promoting same-sex weddings if they do so for opposite-sex weddings.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

163. The statements of Commissioner Lindsey and his agents that it is illegal for wedding vendors to decline to tell a positive message about a same-sex wedding inflicts stigma on Plaintiffs and their faith and denies them dignity as equal citizens.

**ANSWER:** Answering paragraph 163 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

164. The Plaintiffs are aware that Commissioner Lindsey uses testers, and has had testers pose as potential customers in relation to a wedding venue business that declined to rent its facilities for a same-sex wedding.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

165. In light of MHRA, the severe penalties for violating it, the statements by the Defendants, the Defendants' power to file a charge sua sponte, and the Defendants use of testers, the Plaintiffs have refrained from promoting or providing their cinematic, story-telling services for weddings in any of the ways described above.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

166. If Plaintiffs publicly promote their cinematic, story-telling services by communicating that they will only tell the stories of marriages between one man and one woman, and not those of same-sex marriages, they will be engaging in business practices that Defendants have categorically stated violate MHRA.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

167. If Plaintiffs publicly promote their cinematic, story-telling services for weddings they will receive requests to provide those expressive services for same-sex weddings.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

168. Pursuant to their religious beliefs and expressive purposes, Plaintiffs will decline those requests, which the Defendants have categorically stated violates MHRA.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that "[p]ursuant to their religious beliefs and expressive purposes, Plaintiffs will decline those requests" and accordingly deny them. As to the remaining allegations, Defendants admit that it is Defendants' view that the Larsens would violate the Minnesota Human Rights Act if they offer wedding videography services to the public, but refuse to provide wedding videography services for same-sex couples.

169. In fact, on December 15, 2016, the Larsens received a request to produce a wedding video celebrating a wedding between two women in the Fall of 2017.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

170. If the Larsens were presently offering their cinematic, story-telling services for weddings, they would desire to decline this request pursuant to their religious beliefs and expressive purposes, which Defendants have categorically stated would violate the MHRA.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

171. The Larsens received this request to produce a wedding video celebrating a same-sex marriage even though they are not currently in the wedding industry nor promoting any wedding-related services.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

172. If the Larsens were actively promoting their wedding services they would likely receive more such requests.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

173. If not for MHRA and Defendants' interpretation and past enforcement of it, Plaintiffs would have already announced their cinematic, story-telling services for weddings on their website and through other channels and begun filming and telling the stories of marriages between one man and one woman.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

174. If Plaintiffs obtain the relief requested in this Complaint, they will immediately begin promoting and providing their cinematic, story-telling services for weddings in the manner stated above.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

175. Video production celebrating same-sex marriage is widely available from businesses in the State of Minnesota and across the nation.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in that paragraph and accordingly deny them.

176. For example, the online directory http://weddingequalitymn.com/ lists approximately 100 MN businesses under its "Photo/Video" category that are willing to tell the story of same-sex marriages through photographs or video productions.

**ANSWER:** Answering paragraph 176 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent. Defendants affirmatively state that as of September 30, 2019, Defendants were unable to find the identified website.

177. Likewise, the online directory http://gayweddings.com lists approximately 40 MN businesses that are willing to create video productions celebrating same-sex marriages.

**ANSWER:** Answering paragraph 177 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

178. Other video production specialists offer cinematic, story-telling services for weddings that are similar to those the Larsens desire to offer.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

179. For example, Anthony Begley Cinematography is listed on http://gayweddings.com as a company that serves Minnesota and that is happy to tell the stories of same-sex marriages through film.

**ANSWER:** Answering paragraph 179 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

180. On its website, http://anthonybegley.com/, Anthony Begley Cinematography describes its film services as "visual story telling" that "creat[es] powerful stories to last a lifetime." ANTHONY BEGLEY CINEMATOGRAPHY, http://anthonybegley.com/ (last visited Jan. 10, 2017).

**ANSWER:** Answering paragraph 180 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

181. Anthony Begley Cinematography's website states that "Cinematic Videography" is "a movie-like method to capture your wedding," and as part of its

services offers a "Feature Wedding Film," a "Cinematic Wedding Highlight" film, and a "Wedding Teaser" film.

**ANSWER:** Answering paragraph 181 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

182. Accordingly, persons will be able to easily access video production services to promote and celebrate their same-sex marriages if Plaintiffs are permitted to follow their convictions by declining to promote same-sex marriages while promoting marriages between one man and one woman.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

183. Defendants permit these other photography and video production businesses to advocate for and create expression celebrating same-sex marriages.

**ANSWER:** Answering Paragraph 183 of the Amended Complaint, Defendants state that the word "permit" is vague, undefined, and does not permit an answer. Defendants affirmatively state they do not interpret the Minnesota Human Rights Act as prohibiting any photography and video production business from advocating for and creating expression celebrating marriages between same-sex or opposite-sex couples. Defendants deny all remaining allegations.

184. For example, in announcing their desire to provide video and photography services for same-sex marriages on http://weddingequalitymn.com/, Kay Michael Photography & Video states: "As ardent supporters of Minnesotans Unite, we are overjoyed that all loving couples in Minnesota are now free to marry." WEDDING EQUALITY MN, *Kay Michael Photograph & Video*, http://weddingequalitymn.com/businesses/kay-michael-photography-video/ (last visited Jan. 10, 2017).

**ANSWER:** Answering paragraph 184 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent.

Defendants affirmatively state that as of September 30, 2019, Defendants were unable to find the identified website.

185. Minnesotans Unite was the political organization that successfully advocated for the legalization of same-sex marriage in MN.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

186. In announcing their video services for same-sex marriages on http://weddingequalitymn/, Vivid Eye Productions states: "We are overjoyed that ALL Minnesotans finally have the right to marry. Let us help you relive your wedding day over and over again by capturing every precious moment in beautiful HD." WEDDING EQUALITY MN, *Vivid Eye Productions*, http://weddingequalitymn.com/businesses/vivid-eye-productions/ (last visited Jan. 10, 2017).

**ANSWER:** Answering paragraph 186 of the Amended Complaint, Defendants state that the website speaks for itself and denies the allegations to the extent inconsistent. Defendants affirmatively state that as of September 30, 2019, Defendants were unable to find the identified website.

187. As explained, MHRA is preventing Plaintiffs from celebrating and promoting their religious views about marriage in a similar manner as the businesses above.

**ANSWER:** Defendants deny the allegations in Paragraph 187 of the Amended Complaint.

188. Plaintiffs support the rights of these expressive businesses and their owners to express their beliefs and conduct their businesses in a way that promotes those beliefs and does not promote contrary beliefs. Plaintiffs simply wish to enjoy those same freedoms. Yet MHRA strips Plaintiffs of these freedoms. That is the foundational reason for this lawsuit – to restore Plaintiffs to an equal footing with other expressive business owners in regard to their right to express messages that are consistent with their beliefs, and to avoid expressing those messages that are not.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

189. Plaintiffs are subject to Minnesota laws, including Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3).

**ANSWER:** Defendants admit the allegations in paragraph 189 of the Amended Complaint.

190. At all times relevant to this Complaint, each and all of the acts alleged here are attributable to Defendants, who acted under color of a statute, regulation, custom, or usage of the State of Minnesota.

**ANSWER:** Answering paragraph 190 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary.  To the extent a response is required, Defendants deny.

191. The impact of chilling and deterring Plaintiffs Carl and Angel Larsen, and Telescope Media Group from exercising their constitutional rights constitutes imminent and irreparable harm to Plaintiffs.

**ANSWER:** Answering paragraph 191 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary.  To the extent a response is required, Defendants deny.

192. Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights under the United States Constitution by Defendants.

**ANSWER:** Answering paragraph 192 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary.  To the extent a response is required, Defendants deny.

193. Unless the conduct of Defendants is enjoined, Plaintiffs will continue to suffer irreparable injury.

**ANSWER:** Answering paragraph 193 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary.  To the extent a response is required, Defendants deny.

## CAUSES OF ACTION

I.   **First Cause of Action: Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) Violate the First Amendment of the United States Constitution's Right to Free Speech.**

194. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-193 of this Complaint.

**ANSWER:** Defendants reallege answers to all allegations as provides in Paragraphs 1-193 of this Answer to Amended Complaint.

195. Plaintiffs express messages through their video productions.

**ANSWER:** Answering paragraph 195 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

196. The messages Plaintiffs express through their video productions are their own speech.

**ANSWER:** Answering paragraph 196 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

197. Plaintiffs intend, through their video productions, to promote and express the beauty of marriage as the exclusive union of one man and one woman.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

46

198. Plaintiffs desire to tell the stories of marriages through their video productions to celebrate and promote their religious understanding of marriage as an institution between one man and one woman and as a fundamental building block of society.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

199. It would violate Plaintiffs' religious beliefs and conflict with their message about marriage to force them to tell the story through film of any marriage that conflicts with their religious beliefs that marriage is between one man and one woman, such as a same-sex marriage.

**ANSWER:** Answering paragraph 199 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

200. Plaintiffs' production of films telling the stories of marriages between one man and one woman, and their decision to decline to produce films promoting any other conception of marriage, are protected by the First Amendment.

**ANSWER:** Answering paragraph 200 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

201. The First Amendment prevents the government from compelling people to create, express, support, or promote a message not of their own choosing or to speak when they would rather remain silent.

**ANSWER:** Answering paragraph 201 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

202. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) require that if Plaintiffs express the message that marriage is and should be the union of one man and

one woman through wedding video productions they must also express the contradictory message that marriage is the union of two people of the same sex.

**ANSWER:** Answering paragraph 202 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

203. Thus, Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) require Plaintiffs to engage in expression that they do not desire to convey—expression that violates their core religious beliefs—by requiring them to create films celebrating and promoting same-sex marriage.

**ANSWER:** Answering paragraph 203 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

204. If Plaintiffs begin producing films promoting marriages between one man and one woman, as they desire to do immediately, they will be subject to the severe penalties under Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), up to and including 90 days in jail, for declining to produce films celebrating and promoting a conception of marriage that violates their deeply held religious beliefs.

**ANSWER:** Answering paragraph 204 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

205. The First Amendment's Free Speech Clause also prohibits laws that regulate protected speech based on its content or viewpoint.

**ANSWER:** Answering paragraph 205 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

48

206. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) are content based because they regulate speech about a handful of topics—specifically disability, race, color, creed, religion, disability, national origin, marital status, sexual orientation, and sex—while leaving unregulated speech on the virtually unlimited number of other topics not listed therein.

**ANSWER:** Answering paragraph 206 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

207. For example, Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) do not require a Democrat speech writer to draft a speech for a Republican because political affiliation is not a protected characteristic but sexual orientation is protected and Defendants' interpret its inclusion to require Plaintiffs to produce films telling stories that celebrate and promote same-sex marriages.

**ANSWER:** Answering paragraph 207 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

208. This is content-based discrimination forbidden by the First Amendment.

**ANSWER:** Answering paragraph 208 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

209. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) are also viewpoint discriminatory.

**ANSWER:** Answering paragraph 209 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

210. Defendants enforce § 363A.11(1) and § 363A.17(3) in a viewpoint discriminatory manner at least in relation to the topic of marriage.

**ANSWER:** Answering paragraph 210 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

211. According to Defendants' interpretation and enforcement of § 363A.11(1) and § 363A.17(3), whether an expressive business may decline a commission based on its message depends solely on its view of same-sex marriage.

**ANSWER:** Answering paragraph 211 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

212. For example, expressive businesses that oppose same-sex marriage and decline an order based on its opposing message violate § 363A.11(1) and § 363A.17(3), whereas expressive businesses that support same-sex marriage and decline an order based on its opposing message do not.

**ANSWER:** Answering paragraph 212 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

213. The fact that Defendants enforce § 363A.11(1) and § 363A.17(3) in a manner that requires businesses to express messages consistent with government orthodoxy about same-sex marriage, while allowing them to decline to express messages contrary to such orthodoxy, is rank content and viewpoint discrimination.

**ANSWER:** Answering paragraph 213 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

214. Minnesota Statutes Annotated § 363A.17(3) is additionally constitutionally infirm under the Free Speech Clause because its "legitimate business purpose" exception to prohibited forms of discrimination grants Defendants unbridled discretion to enforce it.

**ANSWER:** Answering paragraph 214 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

215. Section 363A.17(3) contains no guidelines to govern the decisions of the Defendants in applying and enforcing the "legitimate business purpose" exception to prohibited forms of discrimination, thereby permitting Defendants to use their unbounded discretion to punish disfavored speech and viewpoints.

**ANSWER:** Answering paragraph 215 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

216. Defendants have wielded this unbridled discretion to punish disfavored views concerning the topic of marriage.

**ANSWER:** Answering paragraph 216 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

217. For example, Defendants have categorically declared that an expressive business that declines to create speech promoting same-sex marriages based on a religious objection to such marriages is not acting with a "legitimate business purpose" and thus not exempt, yet that same business would be acting with a "legitimate business purpose" and thus exempt if it declined a same-sex marriage request because it did not have sufficient time or the requisite skill.

**ANSWER:** Answering paragraph 217 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

218. The requirements of Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) chill, deter, and restrict Plaintiffs' speech.

**ANSWER:** Answering paragraph 218 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

219. Absent their fear of prosecution under Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), Plaintiffs would immediately announce and promote their entry into the wedding field and begin producing films expressing their beliefs and message about marriage.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

220. Plaintiffs currently suffer the ongoing harm of self-censorship of their desired, protected speech, in order to avoid prosecution under Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

221. Because Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) violate Plaintiffs' free speech rights, they must further a compelling interest in a narrowly tailored way.

**ANSWER:** Answering paragraph 221 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

222. The application of Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) to force Plaintiffs to engage in unwanted expression does not further any legitimate, rational, substantial, or compelling interest.

**ANSWER:** Answering paragraph 222 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

223. Forcing Plaintiffs to promote marriage as the union of two people of the same sex if they promote marriage as the union of one man and one woman does not serve any interest in a narrowly tailored way.

**ANSWER:** Answering paragraph 223 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

224. Defendants have alternative, less restrictive means to achieve any legitimate interests rather than forcing Plaintiffs to abandon their First Amendment free speech rights.

**ANSWER:** Answering paragraph 224 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

225. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) are also underinclusive because they provide numerous exemptions to several forms of prohibited discrimination, including the bar on sexual orientation discrimination.

**ANSWER:** Answering paragraph 225 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

226. Thus, as applied to Plaintiffs, Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) violate the Free Speech Clause of the First Amendment to the United States Constitution as incorporated and applied to the States through the Fourteenth Amendment.

**ANSWER:** Answering paragraph 226 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

227. WHEREFORE, Plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

**ANSWER:** Answering paragraph 227 of the Amended Complaint, the allegations are simply Plaintiffs' characterization of the relief they seek, and no reply is necessary.

II. **Second Cause of Action: Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) Violate the First Amendment of the United States Constitution's Right to Expressive Association.**

228. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-193 of this Complaint.

**ANSWER:** Defendants reallege answers to all allegations as provides in Paragraphs 1-193 of this Answer to Amended Complaint.

229. The First Amendment protects the right of persons to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

230. The First Amendment bars the government from compelling persons to expressively associate with others in the process of creating and disseminating speech.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

231. The First Amendment also prohibits the government from banning people from expressively associating with others in the process of creating and disseminating speech.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

232. Plaintiffs engage in expressive association when they decide to accept a client and collaborate with them to use the client's unique story and wedding event as source material for Plaintiffs' production of films promoting and celebrating marriage as a union between one man and one woman.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

233. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) harm Plaintiffs' ability to promote their beliefs about religion and marriage by requiring them to either decline to associate with clients who share their expressive purpose of promoting marriages between one man and one woman or to willingly associate with clients who desire to promote a view of marriage that directly contradicts their own.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

234. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) requirement that Plaintiffs promote marriage as the union of two people of the same sex, if they promote marriage as the union of a man and a woman, would significantly impair Plaintiffs' religious message about marriage.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

235. The requirements of Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) chill, deter, and restrict Plaintiffs' expressive association.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

236. Absent their fear of prosecution under Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), Plaintiffs would immediately announce and promote their entry into the wedding field and begin associating with those who share their views about marriage to produce films expressing those views.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

237. Plaintiffs currently suffer the ongoing harm of self-censorship of their desired, protected expressive association, in order to avoid prosecution under Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3).

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

238. Because Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) violate Plaintiffs' right to expressive association, they must further a compelling interest in a narrowly tailored way.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

239. The application of Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) to force Plaintiffs to associate to express messages they do not want to express does not further any legitimate, rational, substantial, or compelling interest.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

240. Forcing Plaintiffs to promote marriage as the union of two people of the same sex if they promote marriage as the union of one man and one woman does not serve any interest in a narrowly tailored way.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

241. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) are also underinclusive because they provide numerous exemptions to several forms of prohibited discrimination, including the bar on sexual orientation discrimination.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

242. Defendants have alternative, less restrictive means to achieve any legitimate interests rather than forcing Plaintiffs to abandon their First Amendment right to expressive association.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

243. Thus, as applied to Plaintiffs, Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) violate the Plaintiffs' right to expressive association protected by the Free Speech Clause of the First Amendment to the United States Constitution as incorporated and applied to the States through the Fourteenth Amendment.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

244. WHEREFORE, Plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

## III.  Third Cause of Action: Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) Violate the First Amendment Right to Free Exercise of Religion.

245. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-193 of this Complaint.

**ANSWER:** Defendants reallege answers to all allegations as provides in Paragraphs 1-193 of this Answer to Amended Complaint.

246. Plaintiffs sincerely held religious belief is that marriage is and ought to be only the union of one man and one woman.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

247. Plaintiffs sincerely held religious belief is that to practice their religion they must use their creative talents to promote marriage as the union of one man and one woman and that they should do this through wedding cinematography.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

248. Plaintiffs would violate their religious beliefs if they use their creative talents to promote the message that marriage is anything other than the union of one man and one woman.

**ANSWER:** Answering paragraph 248 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

249. Plaintiffs' religious beliefs about marriage, expression, and business practice are based on the Bible and Christian doctrine

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

250. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) are not operationally neutral or generally applicable and impose special disabilities on Plaintiffs due to their religious beliefs about marriage.

**ANSWER:** Answering paragraph 250 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

251. For example, in their application and enforcement of Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), Defendants specifically target expressive business owners who believe, based on their religious beliefs, that marriage is between one man and one woman by forcing them to create expression promoting a conception of marriage that violates their beliefs.

**ANSWER:** Answering paragraph 251 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

252. However, Defendants allow those expressive business owners whose religion is consistent with same-sex marriage to own and operate an expressive business in the wedding industry without compelling them to promote messages about marriage that violate their beliefs.

**ANSWER:** Answering paragraph 252 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that it is Defendants' view that a business would violate the Minnesota Human Rights Act if it offered services to the public, but refused to provide those services for same-sex couples or refused to provide those services for opposite-sex couples. Defendants deny all remaining allegations.

253. This targeting of, and favoritism for, certain religious beliefs about marriage violates the Free Exercise Clause.

**ANSWER:** Answering paragraph 253 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

254. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) also force Plaintiffs to choose between three unacceptable options: (1) decline to create custom expression celebrating same-sex wedding ceremonies because of their religious beliefs, and suffer investigation, prosecution, and criminal penalties as a result; (2) violate their religious beliefs by creating custom expression celebrating same-sex wedding ceremonies in order to comply with the law; or (3) withdraw from the marketplace their service of creating wedding videos and suffer artistic and dignity harm in order to stay true to their Biblical beliefs about the definition of marriage as one man and one woman, as well as being deprived of their ability to use their God-given talents to create custom expression promoting their religious views about marriage.

**ANSWER:** Answering paragraph 254 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that it is Defendants' view that a business would violate the Minnesota Human Rights Act if it offered services to the public, but refused to provide those services for same-sex couples or refused to provide those services for opposite-sex couples. Defendants deny all remaining allegations.

59

255. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) do not force nonreligious persons and businesses to choose between these same options when they are faced with a request to promote messages that violate their beliefs.

**ANSWER:** Answering paragraph 251 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants.

256. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), as applied by Defendants, is also not neutral or generally applicable because it contains several categorical exemptions.

**ANSWER:** Answering paragraph 256 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

257. For example, one provision states that nothing in the MHRA, including § 363A.11(1) and § 363A.17(3), prohibits any "religious association, religious corporation, or religious society that is not organized for private profit" from "taking any action with respect to education, employment, housing and real property, or use of facilities" in "matters relating to sexual orientation." Minn. Stat. Ann. § 363A.26.

**ANSWER:** Answering paragraph 257 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

258. Another provision states that § 363A.11 as it relates to sex "shall not apply to such facilities as restrooms, locker rooms, and other similar places." Minn. Stat. Ann. § 363A.24.

**ANSWER:** Answering paragraph 258 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is

required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

259. The same provision states that the provisions of § 363A.11 "do not apply to employees or volunteers of a nonpublic service organization whose primary function is providing occasional services to minors, such as youth sports organizations, scouting organizations, boys' or girls' clubs, programs providing friends, counselors, or role models for minors, youth theater, dance, music or artistic organizations, agricultural organizations for minors, and other youth organizations, with respect to qualifications based on sexual orientation." Minn. Stat. Ann. § 363A.24.

**ANSWER:** Answering paragraph 259 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

260. In addition, Minnesota Statutes Annotated § 363A.17(3) provides an exemption from the discrimination it bans where the refusal to do business or to contract is "because of a legitimate business purpose."

**ANSWER:** Answering paragraph 260 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants affirmatively state that the statutes or regulations speak for themselves and deny the allegations to the extent inconsistent.

261. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), as applied by Defendants, are not neutral or generally applicable because Defendants enforce it through a system of individualized exemptions under which they assess the reasons for an exemption and grant exemptions for nonreligious reasons but not for religious reasons.

**ANSWER:** Answering paragraph 261 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

61

262. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), as applied by Defendants, are not neutral or generally applicable because they contain the categorical exemptions listed above, yet Defendants refuse to grant a religious exemption to Plaintiffs.

**ANSWER:** Answering paragraph 262 of the Amended Complaint, the allegations

contain legal conclusions to which no reply is necessary. To the extent a response is

required, Defendants deny.

263. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) also violate Plaintiffs' free exercise rights under the hybrid rights doctrine because they implicate free exercise rights in conjunction with other constitutional protections, like the rights to free speech, expressive association, due process and equal protection.

**ANSWER:** Answering paragraph 263 of the Amended Complaint, the allegations

contain legal conclusions to which no reply is necessary. To the extent a response is

required, Defendants deny.

264. Plaintiffs' compliance with their religious beliefs constitutes a religious exercise under the First Amendment.

**ANSWER:** Answering paragraph 264 of the Amended Complaint, the allegations

contain legal conclusions to which no reply is necessary. To the extent a response is

required, Defendants deny.

265. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) substantially burden Plaintiffs' religious exercise.

**ANSWER:** Answering paragraph 265 of the Amended Complaint, the allegations

contain legal conclusions to which no reply is necessary. To the extent a response is

required, Defendants deny.

266. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) impose severe coercive pressure, up to and including jail time, on Plaintiffs to change or violate their

CASE 0:16-cv-04094-JRT-LIB   Doc. 66   Filed 10/15/19   Page 63 of 76

religious beliefs and chills and deters Plaintiffs' religious exercise by suppressing their religiously motivated messages.

**ANSWER:** Answering paragraph 266 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

267. The requirements of Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) chill, deter, and restrict Plaintiffs' free exercise of religion.

**ANSWER:** Answering paragraph 267 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

268. Absent their fear of prosecution under Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), Plaintiffs would immediately announce and promote their entry into the wedding field and begin producing films expressing their beliefs and message about marriage, in accordance with their religious convictions.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in that paragraph and accordingly deny them.

269. Plaintiffs currently suffer the ongoing harm of self-censorship of their desired, protected free exercise rights in order to avoid prosecution under Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3).

**ANSWER:** Answering paragraph 269 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

270. Because Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) violate Plaintiffs' free exercise rights, they must further a compelling interest in a narrowly tailored way.

**ANSWER:** Answering paragraph 270 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

271. Defendants do not serve any legitimate, rational, substantial, or compelling interest in forcing Plaintiffs to violate their religious beliefs by creating videos that present same-sex weddings in a favorable light.

**ANSWER:** Answering paragraph 271 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

272. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) are also underinclusive because they provide numerous exemptions to several forms of prohibited discrimination, including the bar on sexual orientation discrimination.

**ANSWER:** Answering paragraph 272 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

273. To achieve any legitimate interests that Defendants may assert, Defendants have many alternative, less restrictive mechanisms available.

**ANSWER:** Answering paragraph 273 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

274. Thus, the MHRA violates Plaintiffs' right to free exercise of religion under the First Amendment to the United States Constitution as incorporated and applied to the States through the Fourteenth Amendment.

**ANSWER:** Answering paragraph 274 of the Amended Complaint, the allegations contain legal conclusions to which no reply is necessary. To the extent a response is required, Defendants deny.

275. WHEREFORE, Plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

**ANSWER:** Answering paragraph 275 of the Amended Complaint, the allegations are simply Plaintiffs' characterization of the relief they seek, and no reply is necessary.

## IV.   Fourth Cause of Action: Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) Impose Unconstitutional Conditions on Access to Minnesota's Marketplace.

276. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-193 of this Complaint.

**ANSWER:** Defendants reallege answers to all allegations as provides in Paragraphs 1-193 of this Answer to Amended Complaint.

277. The First Amendment prohibits the government from conditioning a benefit on the relinquishment of a First Amendment right.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

278. Through their interpretation and enforcement of Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), Defendants condition Plaintiffs' ability to participate in the wedding service industry and produce wedding cinematography promoting marriage between one man and one woman on the unconstitutional requirement that Plaintiffs must also produce wedding cinematography promoting marriages other than between one man and one woman.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

279. Plaintiffs have the First Amendment right to choose the content of their expression, to promote the messages they desire to promote, to participate in the creation of the speech they deem desirable, to exercise their religion by promoting messages consistent with their religious beliefs, and to decline to promote messages contrary to their religious beliefs.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

280. But Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) mandate that Plaintiffs create films promoting same-sex marriage, thereby unconstitutionally conditioning the receipt of an essential benefit—specifically, the right to make a living in the occupation of one's choice, the right to run a business, and the right to sell speech—on the willingness of Plaintiffs to surrender these First Amendment rights.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

281. Thus, Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) violate the unconstitutional conditions doctrine.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

282. WHEREFORE, Plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

## V.   Fifth Cause of Action: Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) Violate the Fourteenth Amendment Right to Equal Protection.

283. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-193 of this Complaint.

**ANSWER:** Defendants reallege answers to all allegations as provides in Paragraphs 1-193 of this Answer to Amended Complaint.

66

284. Under the Equal Protection Clause, the government may not treat someone disparately as compared to similarly situated persons and businesses when such disparate treatment burdens a fundamental right.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

285. Plaintiffs are for all relevant purposes similarly situated to other expressive businesses in Minnesota that provide marriage-related services that express messages about marriage.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

286. Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) and Defendants' interpretation and enforcement thereof treat Plaintiffs' religious speech and religious exercise differently from those similarly situated to Plaintiffs.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

287. Specifically, Defendants permit those whose beliefs support same-sex marriage to own and operate a marriage-related expressive business according to their beliefs, and to express messages consistent with those beliefs, without fear of punishment.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

288. Yet Defendants impose severe penalties on those whose religious beliefs oppose same-sex marriage and who desire to own and operate marriage-related expressive businesses according to their religious beliefs and to express messages consistent with those beliefs which includes avoiding expressing contrary messages.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

289. Thus, Defendants treat Plaintiffs differently than similarly situated parties in a manner that infringes several fundamental rights of Plaintiffs, such as their freedom of speech, expressive association, and free exercise of religion.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

290.  When the enforcement of laws, like Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), infringe on such fundamental rights, courts presume discriminatory intent.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

291.  In this case, the presumption of discriminatory intent is borne out by Defendants' intentional discrimination against the rights of free speech and free exercise of religion by Plaintiffs and those like Plaintiffs who hold traditional Christian beliefs about marriage as an institution between one man and one woman.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

292.  Defendants do not serve any legitimate, rational, substantial, or compelling interest in forcing Plaintiffs to violate their religious beliefs by creating videos that present same-sex weddings in a favorable light.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

293.  Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) are also underinclusive because they provide numerous exemptions to several forms of prohibited discrimination, including the bar on sexual orientation discrimination.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

294.  To achieve any legitimate interests that Defendants may assert, Defendants have many alternative, less restrictive mechanisms available.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

295. WHEREFORE, Plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

VI.   **Sixth Cause of Action: Minnesota Statute Annotated § 363A.17(3) Violates the Fourteenth Amendment Right to Procedural Due Process.**

296. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-193 of this Complaint.

**ANSWER:** Defendants reallege answers to all allegations as provides in Paragraphs 1-193 of this Answer to Amended Complaint.

297. The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring speech or outlawing behavior pursuant to vague standards that grant unbridled discretion to government officials to arbitrarily prohibit some expression and action and that fail to give speakers and actors sufficient notice whether their speech or actions violate the law.

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

298. Minnesota Statute Annotated § 363A.17(3) permits enforcement officials to grant exemptions to the forms of discrimination bars if the alleged discrimination is "because of a legitimate business purpose."

**ANSWER:** This claim has been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny.

299. The MHRA nowhere defines "legitimate business purpose."

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

300. The MHRA contains no guidelines to govern the decisions of the Defendants in applying and enforcing the "legitimate business purpose" exception to prohibited forms of discrimination, thereby permitting Defendants to use their unbounded discretion to punish disfavored speech and viewpoints.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

301. Defendants have wielded this unbridled discretion to punish disfavored views concerning the topic of marriage.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

302. For example, Defendants have categorically declared that an expressive business that declines to create speech promoting same-sex marriages based on a religious objection to such marriages is not acting with a "legitimate business purpose" and thus not exempt, yet that same business would be acting with a "legitimate business purpose" and thus exempt if it declined a same-sex marriage request because it did not have sufficient time or the requisite skill.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

303. Citizens of common intelligence must guess about whether their desired speech or actions will be treated as a "legitimate business purpose," and thus exempt from § 363A.17(3), or deemed not to be a "legitimate business purpose," and thus not exempt.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

304. The "legitimate business exception" provides insufficient warning or notice as to what expression or conduct is prohibited.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

305. Therefore, the rights of Plaintiffs and other Minnesotans now turn on the whim of government officials, and Plaintiffs and other Minnesotans therefore cannot know whether their desired speech violates the law.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

306. Minnesota Statute Annotated § 363A.17(3) therefore violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

307. WHEREFORE, Plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

## VII. Seventh Cause of Action: Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) Violate the Fourteenth Amendment Right to Due Process.

308. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-193 of this Complaint.

**ANSWER:** Defendants reallege answers to all allegations as provides in Paragraphs 1-193 of this Answer to Amended Complaint.

309. The Supreme Court's majority opinion in *Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015), and other Supreme Court precedent, dictates that the Fourteenth Amendment protects the liberty of individuals to make choices central to their own dignity and autonomy, including "choices that define [their] personal identity and beliefs."

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

310. The Fourteenth Amendment protects the rights of individuals to serve their God in accordance with the dictates of their own consciences, thereby allowing them to make the decisions that define their personal identity based on religious beliefs.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

311. The Fourteenth Amendment guarantees the right to pursue one's entrepreneurial dreams, engage in the common occupations of life, operate a business, earn a livelihood, and continue employment unmolested.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

312. The right to pursue one's entrepreneurial dreams is fundamental as a matter of history and tradition.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

313. The Fourteenth Amendment protects personal rights essential to individuals' orderly pursuit of happiness.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

314. The desire of individuals to use their own talents and imaginations to pursue a livelihood is part of the deeply held ethos of the American dream. To deny that dream to those with certain deeply held religious beliefs is to strip them of their identity, dignity, liberty, and potential to find fulfillment and to impose on them an abhorrent degree of stigma and injury.

**ANSWER:** This claim has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny.

315. According to Supreme Court precedent, such as *Obergefell*, while a state can have its own views of the ideal ordering of society, when it imposes those beliefs through law with the necessary consequence of putting the imprimatur of the State on excluding people with certain personal beliefs from the pursuit of basic liberties, they demean and stigmatize those individuals in a manner forbidden by the Fourteenth Amendment.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

316. Under the Supreme Court's precedent, to deny people the right to engage in their business in a way that is consistent with their own concepts of existence and identity is to deny them liberty, disparage their intimate personal choices and identity, and diminish their personhood.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

317. Carl and Angel Larsen believe that marriage may exist only between one man and one woman.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

318. This belief is a core tenant of the Larsen's faith.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

319. The Larsen's faith defines them, their identity, and every aspect of their lives, including their business interactions.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

320. The Larsens desire to engage in the marketplace to make videos celebrating weddings as they believe God designed them is an intimate choice that defines—and is an expression of—their personal identity and beliefs that are central to their dignity and autonomy.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

321.   The requirement of Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3), as explained by Commissioner Lindsey, is that all businesses like the Larsen's business, must facilitate, participate in, celebrate, and produce expression favorable to same-sex weddings if they use their business to celebrate and produce expression favorable of weddings they believe are correctly defined as one man and one woman.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

322. Thus, Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) deny the Larsen's self-identity, dignity, liberty, intimate personal choices, and personhood by prosecuting them for the messages they choose not to express, strips them of their of dignity, stigmatizes their very identity as social pariah, and punishes them in violation of the Fourteenth Amendment.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

323. Because Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) infringe these rights under the Fourteenth Amendment, it must further a compelling interest in a narrowly tailored way.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

324. Minnesota Statutes Annotated §363A.11(1) and § 363A.17(3), as applied to Plaintiffs, does not serve any legitimate, rational, substantial, or compelling interest by forcing the Plaintiffs to abandon their religious identity, personal dignity, personal autonomy, and personal liberty, and instead imposes stigma and strips them of dignity.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

325. And in addition to Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) not serving a legitimate interest, they are not narrowly tailored to do so regardless.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

326. Defendants have alternative less restrictive means to achieve any legitimate interests that do not require them to force the Plaintiffs to abandon their religious identity, personal dignity, personal autonomy, and personal liberty and face government-imposed stigma and denial of dignity.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

327. Accordingly, as applied to the Plaintiffs, Minnesota Statutes Annotated § 363A.11(1) and § 363A.17(3) deny the Plaintiffs the right to make intimate choices that define their religious identity, personal dignity, personal autonomy, and personal liberty and instead stigmatizes the Larsens and denies their dignity in violation of the Fourteenth Amendment of the United States Constitution.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

328. WHEREFORE, Plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

**ANSWER:** This claim has been dismissed, so no answer is required.   To the extent an answer is required, Defendants deny.

## AFFIRMATIVE AND OTHER DEFENSES

329.   Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted.

330.   Plaintiffs failed to join all necessary parties.

331.   Plaintiffs' claims are barred by the Eleventh Amendment and other applicable immunities.

332.   Defendants reserve any other affirmative defenses or objections or other defenses available under the applicable Rules of Civil Procedure.

WHEREFORE, Defendants ask that Plaintiffs' Amended Complaint be dismissed with prejudice and for such other further relief as the Court deems just and equitable.

Dated: October 15, 2019                    Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ **Janine Kimble**
LIZ KRAMER (#0325089)
Solicitor General

JANINE KIMBLE (#0392032)
HILLARY TAYLOR (#0398557)
Assistant Attorneys General

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
(651) 757-1010 (Voice)
(651) 282-5832 (Fax)
liz.kramer@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS

|#4559174-v1