UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TELESCOPE MEDIA GROUP, a
Minnesota corporation, CARL
LARSEN and ANGEL LARSEN, the
founders and owners of TELESCOPE
MEDIA GROUP,

                    Plaintiffs,

vs.

REBECCA LUCERO, in her official
capacity as Commissioner of the
Minnesota Department of Human
Rights; KEITH ELLISON, in his
official capacity as Attorney General of
Minnesota,

                  Defendants.

Civ. No. 16-CV-04094 (JRT-LIB)

**DEFENDANTS' MEMORANDUM
IN OPPOSITION TO PLAINTIFFS'
MOTION FOR VOLUNTARY
DISMISSAL WITH PREJUDICE**

## INTRODUCTION

Four years after Plaintiffs filed this Action, and after establishing binding and harmful precedent based on nothing more than a farfetched business model, Plaintiffs have decided their business model does not work and seek to dismiss this Action. The Court should dismiss this case with conditions that address the harm Plaintiffs have caused to Defendants, the integrity of the judicial system, and the public interest.

In December 2016, Plaintiffs initiated this Action, alleging they planned to enter the wedding industry to provide wedding videography services. They were so ready to begin providing these services, they alleged, they wanted to participate in a January 15, 2017 wedding expo. (ECF No. 1, at ¶ 150.) In this litigation, Plaintiffs compared themselves to filmmakers such as Steven Spielberg and alleged they would have extraordinary editorial

control over their videos.  One might expect the couple getting married may have editorial control, but on a motion to dismiss, these and other highly fanciful allegations were taken as true.

Defendants moved to dismiss, and this Court granted the motion.  The Court also denied Plaintiffs' motion for preliminary injunction as moot.  Plaintiffs appealed and the Eighth Circuit reversed in part.  The Eighth Circuit acknowledged—as it must—that it "must accept" Plaintiffs' allegations in the complaint "as true," and reached a troubling conclusion—that Plaintiffs had stated a claim under the First Amendment that it was unconstitutional for the MHRA to require that they make wedding videography services available to same-sex couples if they made them available to opposite-sex couples.

On remand, Plaintiffs and Defendants stipulated to entry of a preliminary injunction, which was entered by this Court on November 4, 2019.  (ECF Nos. 63, 64, 69.)  That preliminary injunction is to "remain in effect until further order of this Court."  (Doc. 69, at 3.)  Now, four years after filing this Action, and after establishing detrimental precedent based on nothing more than their stated desire to make wedding videos expressing their own views, Plaintiffs have decided their business model does not work and seek to dismiss this Action.  Defendants are sympathetic to the extraordinary burdens Minnesota businesses have faced during the pandemic but believe quick dismissal of this Action will reward Plaintiffs' attempt to take advantage of the judicial system and avoid the merits of this case.  As a result, dismissal without conditions would leave the record sorely thin and misrepresentative, and would do nothing to discourage future fanciful litigation.  To the

extent this Action is dismissed, Defendants request certain terms in the Order, including vacating the preliminary injunction.

## BACKGROUND

### I.   PROCEDURAL HISTORY.

Plaintiffs initiated this pre-enforcement lawsuit on December 6, 2016.  (ECF No. 1.)  They alleged a desire to participate in a January 15, 2017 wedding expo.  (ECF No. 1, at ¶ 151.)  On January 13, 2017, Plaintiffs filed an Amended Complaint and motion for preliminary injunction.  (ECF Nos. 13 & 14.)  Plaintiffs alleged they wanted to "us[e] their media production and filmmaking talents to tell stories of marriages between one man and one woman."  (ECF No. 13, at ¶ 5.)  Plaintiffs had been running a successful videography business since 2008 but alleged in their Amended Complaint that they wanted to enter a new line of business in the wedding market.  (*Id.*, at ¶¶ 79, 110.)  They allegedly sought to enter this market because they were "deeply troubled" by the United States Supreme Court's decision in *Obergefell v. Hodges*, 576 U.S. 644 (2015), which held there was a federal constitutional right to marriage between same sex couples, because Plaintiffs believe marriage between same sex couples is not "morally equivalent to the historic, biblically orthodox definition of marriage as between one man and one woman."  (*Id.*, at ¶¶ 115-116.)  Plaintiffs allegedly wanted to enter the wedding market to "use their clients . . . to tell [] stories and express" Plaintiffs' religious belief that marriage should only be between two people of the opposite sex.  (*Id.*, at ¶¶ 119, 126, 129.)  They allegedly planned to create these wedding videos for couples and publicly promote all of the videos through social media and by posting them on the Telescope website.  (*Id.*, at ¶¶ 135-138.)

Plaintiffs alleged the Minnesota Department of Human Rights interprets the Minnesota Human Rights Act to prohibit Plaintiffs from "declin[ing] to create expressive wedding-related services celebrating same sex weddings." (*Id.*, at ¶ 8.)

Defendants moved to dismiss the Amended Complaint and opposed Plaintiffs' motion for preliminary injunction. (ECF Nos. 31 & 35.) One basis was Defendants' argument that Plaintiffs lacked standing, in part because they had not begun making wedding video services available to the public. (ECF No. 34, at 6; *see also* ECF No. 35, at 27 n.14.) Defendants were concerned this lawsuit was created solely to further a certain legal theory without any grounding in a real-world business that Plaintiffs actually intended to create. As such, their alleged injury was highly speculative. (*See* ECF No. 34, at 6.) On September 20, 2017, the district court granted Defendants' motion to dismiss, and denied Plaintiffs' motion for preliminary injunction as moot. (ECF No. 53.) Plaintiffs appealed to the Eighth Circuit. (ECF No. 55.) The Eighth Circuit affirmed in part, reversed in part, and remanded; the Eighth Circuit directed the district court to consider whether Plaintiffs were entitled to a preliminary injunction. (ECF No. 61, at 27.)

The parties stipulated to entry of a preliminary injunction, which permitted Plaintiffs to "produc[e] films (a) promoting marriage exclusively as an institution between one man and one woman, and (b) declin[e] to create films that express ideas that conflict with their beliefs about marriage." (ECF No. 64; *see also* ECF No. 63.) The district court entered the preliminary injunction on November 4, 2019. (ECF No. 69.) The injunction "remain[s] in effect until further order of this Court." (*Id.*, at 3.)

Defendants answered the Amended Complaint.  (ECF No. 66.)  On December 9, 2019, the parties submitted a Rule 26(f) Report.  (ECF No. 72.)

Following those steps, Plaintiffs have taken few steps to prosecute the action.  On December 12, 2019, Defendants served initial disclosures via U.S. mail.  (Declaration of Janine Kimble ("Kimble Dec.") ¶ 2.)   Plaintiffs served their initial disclosures on December 16, 2019.   (Kimble Dec. ¶ 2.)   Plaintiffs and Defendants exchanged correspondence in January, February, and March 2020 regarding Plaintiffs' request that Defendants amend their initial disclosures.  (Kimble Dec. ¶ 2.)   Plaintiffs served supplemental initial disclosures on February 26, 2020.  (Kimble Dec. ¶ 2.)  Defendants served supplemental initial disclosures on March 2, 2020, and March 12, 2020.  (Kimble Dec. ¶ 2.)  Plaintiffs have served three documents along with their initial disclosures; Defendants have served no documents.  (Kimble Dec. ¶ 2.)   Following Plaintiffs' March 2, 2020 letter serving supplemental initial disclosures, Defendants are aware of no steps that Plaintiffs have taken to prosecute this action.  (Kimble Dec. ¶ 2.)

On October 19, 2020, Defendants inquired whether Plaintiffs would consent to email service of Defendants' first set of discovery.  (Kimble Dec. ¶ 3.)  On October 21, 2020, Plaintiffs proposed delaying discovery until the court had a Rule 16 conference.  (Kimble Dec. ¶ 3.)  However, Defendants had already served their first set of requests via U.S. mail earlier in the day on October 21 and declined Plaintiffs' proposal.  (Kimble Dec. ¶ 3 & Ex. 1.)  Counsel for Defendants contacted the magistrate judge's chambers on

October 26, 2020, to request a Rule 16 conference and a scheduling order, but was informed the court considered the case closed.  (Kimble Dec. ¶ 3.)[1]

On November 5, 2020, Plaintiffs stated they wanted to voluntarily dismiss the action, because they had faced "some unique business pressures recently and been negatively affected by the COVID-19 pandemic."  (Kimble Dec. ¶ 4.)  They stated that they had left the wedding field and were exploring new business opportunities, some of which may lead them to move out of Minnesota.  (Kimble Dec. ¶ 4.)  They circulated a proposal, and on November 20, 2020, Defendants circulated a response.  (Kimble Dec. ¶ 4 & Exs. 2-3.)  On December 16, 2020, Plaintiffs' counsel stated the parties were too far apart and they would move to dismiss the action.  (Kimble Dec. ¶ 4.)  Defendants stated they would not consent to voluntary dismissal.  (Kimble Dec. ¶ 4.)

## II.   PROMOTION OF PLAINTIFFS' WEDDING VIDEOGRAPHY SERVICES AND LAWSUIT.

After entry of the preliminary injunction, Plaintiffs added the following statement to their website: "Telescope Media Group exists to glorify God through top-quality media production.  Because of TMG's owners' religious beliefs and expressive purposes, it cannot make films promoting any conception of marriage that contradicts its religious beliefs that marriage is between one man and one woman, including films celebrating same-sex marriages."  (Kimble Dec. Ex. 4; *see also* Kimble Dec. Ex. 5.)  As of January 7, 2021, that text does not appear on Plaintiffs' website.  (Kimble Dec. ¶ 5.)

---

[1]  In light of Plaintiffs' request to dismiss this case, Defendants have agreed to multiple extensions of time to respond to the discovery requests.  (Kimble Dec. ¶ 3.)  As a result, Plaintiffs have not responded to the requests.  (Kimble Dec. ¶ 3.)

It appears that although a full year has passed since the Court entered the preliminary injunction, Plaintiffs have provided almost no videography services. Although public promotion of all videos was allegedly mandatory, Plaintiffs have posted only two wedding videos to their website and YouTube. (ECF No. 13, at ¶¶ 136, 138; Kimble Dec. ¶ 6 & Exs. 6-7.) Because Plaintiffs have not served answers to Defendants' discovery requests, Defendants do not know where or when the wedding videography services were provided or the level of control over content Plaintiffs had. Although the opening sequences state, "A Telescope Media Group Film," and the closing sequences state "Directed by Carl & Angel Larsen" and copyright Telescope Media Group 2020, Defendants have no way of knowing how the videos were created or who was part of the process. (Kimble Dec. ¶ 7.)

Plaintiffs continued to advertise their wedding video services until October 2020. As of October 23, 2020, Plaintiffs' website still had a wedding tab, which included the two wedding videos described above. (Kimble Dec. ¶ 8 & Exs. 8 & 9.) As of October 30, 2020, the website no longer contained a wedding tab. (Kimble Dec. ¶ 8 & Ex. 10.)[2] Defendants are unaware of any other marketing efforts made by Plaintiffs between entry of the preliminary injunction on November 4, 2019, and October 30, 2020. (Kimble Dec. ¶ 9.)[3] Although Plaintiffs state that they are exiting the wedding business due to

---

[2]  As of December 4, 2020, the disclaimer was still on the website, but it is not there anymore. (Kimble Dec. ¶¶ 5, 8 & Ex. 11.)

[3]  The Governor declared a peacetime emergency on March 13, 2020. (Executive Order 20-01, https://mn.gov/governor/assets/EO%2020-01_tcm1055-422957.pdf.) The Governor temporarily closed places of public accommodation, beginning March 17, 2020. (Executive Order 20-04, https://mn.gov/governor/assets/2020_03_16_EO_20_04_Bars_Restaurants_tcm1055-
(Footnote Continued on Next Page)

COVID-19, it is unclear how many wedding inquiries they had, how many weddings they had scheduled before the pandemic began in March, or how many contracts they entered with couples.  Plaintiffs have provided no context for their wedding business development, which was advertised for over one year.

Alliance Defending Freedom ("ADF") represents Plaintiffs in this matter.  ADF represents parties in numerous cases seeking to establish a religious exemption to public accommodation laws.[4]   Their cases touch a variety of markets—cake decorating, calligraphy, floral arrangements, screen-printing, and photography, for example.[5]  ADF's website states, "[y]ou should never be forced by the government to act in a way that is morally wrong, and Alliance Defending Freedom is fighting to ensure that you are free to live according to your faith."[6]  Plaintiffs' lawsuit is still advertised on the ADF website, and implies Plaintiffs are still seeking to join the wedding videography business.[7]  The website states, "the Larsens' desire to enter the wedding cinematography field has hit a

---

423380.pdf.)   The  Governor's  Stay-at-Home  Order  was  effective  March  27,  2020. (Executive      Order      20-20,      https://mn.gov/governor/assets/3a.%20EO%2020-20%20FINAL%20SIGNED%20Filed_tcm1055-425020.pdf).

[4]  *See* Alliance Defending Freedom, *You Are Free to Believe, but Are You Free to Act?*, https://www.adflegal.org/issues/religious-freedom/conscience (last accessed Jan. 7, 2021), available at: https://perma.cc/G7AH-BPC2.

[5]  *Id.*

[6]  *Id.*

[7]    Alliance    Defending    Freedom,    *Telescope    Media    Group    v.    Lucero*, https://www.adflegal.org/case/telescope-media-group-v-lucero               (last               accessed January 7, 2021), available at: https://perma.cc/UHN5-Y7X4.

huge obstacle."  The website links to YouTube, where you can "watch" the Larsens' story; in that video, Mr. Larsen states he wants to tell "marriage stories."[8]

## STANDARD OF REVIEW

Plaintiffs seek dismissal under Fed. R. Civ. P. 41(a)(2):[9]

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

The Court has discretion whether to grant the motion.  *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999).  The Court applies the following standard when assessing whether to grant a motion for voluntary dismissal:

> In exercising that discretion, a court should consider factors such as whether the party has presented a proper explanation for its desire to dismiss[]; whether a dismissal would result in a waste of judicial time and effort[]; and whether a dismissal will prejudice the defendants[]. Likewise, a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum.

*Hamm*, 187 F.3d at 950 (citations omitted) (*quoted in Adams v. USAA Casualty Insurance Company*, 863 F.3d 1069, 1080 (8th Cir. 2017)).  To deny the motion, the court must find "some plain legal prejudice" that flows from dismissal.  *Hoffmann v. Alside, Inc.*, 596 F.2d

---

[8] Alliance Defending Freedom, YouTube, *Create Freely:   The Larsens' Story*, https://www.youtube.com/watch?v=_v-NVkrvvEw (last accessed Jan. 7, 2021).   It has been viewed 16,743 times.  (*Id.*)

[9] The parties negotiated dismissal but did not reach agreeable terms.  (Kimble Dec. ¶ 4.)

822, 823 (8th Cir. 1979).   A court may attach conditions to the dismissal to prevent prejudice.  *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 146 (9th Cir. 1982).

## ANALYSIS

### I.   LAW REGARDING RULE 41 DISMISSALS.

Plaintiffs bring their motion under Fed. R. Civ. P. 41(a)(2).   Under that rule, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  "[T]he trial court is not required to grant the dismissal and may require the plaintiff to agree to certain terms and conditions in exchange for granting the dismissal."  Rule 41, Dismissal of Actions, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 41.  The purpose of Rule 41(a)(1) is "to curb abuse of the judicial system."  *Id.*; *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990).  It was designed to limit abuses by plaintiffs who previously could dismiss an action as a matter of right before entry of a verdict.  *Cooter & Gell*, 496 U.S. at 397.  A court must analyze whether dismissal under Rule 41(a)(2) would result in unfairness to defendant—i.e., would prejudice defendant.   *Adams v. USAA Casualty Insurance Company*, 863 F.3d 1069, 1079 (8th Cir. 2017) (purpose is to protect against unfairness). If the court determines dismissal would unfairly prejudice another party, the court may deny the motion or "mak[e] its approval subject to the plaintiff accepting stated terms and conditions."  Rule 41, Dismissal of Actions, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 41.

In assessing prejudice, the Court may consider a number of non-exclusive factors: (1) expenses and costs related to the lawsuit; (2) defendant's effort and expense involved

in preparing for trial; (3) excessive delay and lack of diligence on the part of plaintiff in prosecuting the action; (4) insufficient explanation of the need to take a dismissal; (5) the fact that a motion for summary judgment has been filed by defendant; (6) emotional and psychological trauma associated with the experience of defending another lawsuit; and (7) prejudice resulting from uncertainty over title to land. *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987).

## II.   PLAINTIFFS' MOTION FOR DISMISSAL ON THE TERMS PROPOSED BY PLAINTIFFS SHOULD BE DENIED.

Here, the following factors weigh against dismissal on the terms proposed by Plaintiffs:  (1) Plaintiffs should not take advantage of the judicial system and evade an adverse dismissal decision for lack of standing after discovery demonstrated Plaintiffs' proposed business was not viable; (2) Plaintiffs have lacked diligence in prosecuting the action; and (3) Defendants have expended a great deal of cost in defending the lawsuit.

*First*, the Court must place conditions on the dismissal of this case because Plaintiffs are attempting to take advantage of the judicial system by seeking dismissal simply to avoid an unfavorable result.  Plaintiffs cause prejudice to Defendants, and to the judicial system as a whole, when they manufacture a dispute to obtain a desired precedent in an appellate court and then abandon their claims altogether.  For an issue as important as this—whether a business may categorically deny services to same-sex couples—decisions based on allegations alone are an injustice to the community and undercut the integrity of the courts. Hollow impact litigation that asks a court to decide a legal question that is completely disconnected from any actual case or controversy should not be encouraged.  *In re*

*Guardianship of Tschumy*, 853 N.W.2d 728, 756-57 (Minn. 2014) (Stras, J., dissenting) (the court should not analyze legal questions "completely disconnected from any case or controversy"). When a plaintiff then seeks to dismiss a case that was untethered to any actual case or controversy, it is critical to place conditions on the dismissal to make clear that a live case or controversy is essential for justiciability.

The Court should discourage parties from using the time and resources of the public judiciary to adjudicate cases that involve no live controversy. Indeed, "[i]n order to invoke the jurisdiction of the federal courts, the parties must demonstrate an actual, ongoing case or controversy within the meaning of Article III of the Constitution." *Iron Cloud v. Sullivan*, 984 F.2d 241, 242 (8th Cir. 1993) (internal quotation marks omitted). Additionally, a federal court has no authority to issue an "opinion advising [parties] what the law would be upon a hypothetical state of facts," but must resolve only "real and substantial controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations and internal quotation marks omitted).

Here, there is no – and likely has never been – a live case or controversy. Defendants have repeatedly argued Plaintiffs' business theory lacks logic and will be unlikely to survive scrutiny through discovery. The material change between the beginning of this case and now is that Defendants have served discovery requests. Some of those requests seek to obtain discovery to cast doubt on: (a) Plaintiffs' allegations that they planned to enter the wedding videography business at all, (b) that the type of business Plaintiffs were developing was at all like it was alleged in the Amended Complaint, and (c) that the type of business Plaintiffs were allegedly developing was viable in the marketplace. Plaintiffs'

12

allegations should be tested and Defendants believe if they were tested, Defendants would prevail. "[A] party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum." *Hamm v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 950 (8th Cir. 1999). Dismissals that seek a strategic advantage in the form of avoiding an unfavorable outcome are a disservice to the fundamental principles underlying our judicial system.

It appears Plaintiffs seek to dismiss this case because they do not want the merits of the case analyzed.[10] In particular, they do not want Defendants to test Plaintiffs' allegations in discovery and for the district court to assess their standing on a complete factual record. In many respects the allegations in the Amended Complaint make no sense. Plaintiffs allege that two people who want to get married will contract with Plaintiffs to create a wedding video, over which Plaintiffs retain full editorial control, which must be posted on Plaintiffs' website so that Plaintiffs may use the customer's wedding video to convey Plaintiffs' views about marriage. During discovery, Defendants would test those allegations:

- Do Plaintiffs retain full editorial control in actuality?

- What occurs when there are disagreements with the couple?

- Is the video Plaintiffs' expression or that of the two people getting married?

- Are there any customers for this farfetched business model?

---

[10] If avoiding the merits is not Plaintiffs' motivation, it is unclear why they would not agree to Defendants' proposal for reasonable terms associated with dismissal. Plaintiffs' refusal to agree to, and decision not to seek, vacatur of the preliminary injunction is particularly troublesome and curious.

- Is each and every wedding video Plaintiffs create for customers turned into a movie reflecting Plaintiffs' beliefs about marriage?

In public statements, Defendants observed, "[u]nlike any wedding videographer we've ever heard of, [Telescope] claims it will exercise complete creative control over wedding videos, so that any couple getting married will be essentially merely actors in the videographers' short film."  (Kimble Dec. Ex. 12.)  They further expressed that it would be preferable to "help the trial court establish a set of facts based in reality" rather than appeal the Eighth Circuit decision to the U.S. Supreme Court, because the Supreme Court "would have to accept Telescope's fairy tale as true."  (*Id.*)

Dismissing this action now without conditions would deprive Defendants of the opportunity to test Plaintiffs' fanciful allegations.  It also leaves the procedural history such that the only information in the public record are court decisions based exclusively on the untested allegations in the Amended Complaint.

Plaintiffs erroneously argue that plain legal prejudice cannot exist if dismissal is with prejudice.  (ECF No. 73, at ¶ 6.)  To determine whether prejudice exists, the Court analyzes a comprehensive host of factors and whether the dismissal occurs with prejudice is simply one, *non-dispositive* factor.  *See Hudson Eng'g Co. v. Bingham Pump Co.*, 298 F. Supp. 387, 388-89 (S.D.N.Y. 1969) (rejecting plaintiff's argument that "when a motion is brought for voluntary dismissal with prejudice the court has no discretion and must grant the motion").

*Second*, dismissal on Plaintiffs' proposed terms is improper in this case because Plaintiffs have lacked diligence in prosecuting the action.  Indeed, based on Plaintiffs'

14

Complaint and Amended Complaint, they were so ready to begin providing wedding videography services in December 2016 that there was a January 15, 2017 wedding expo they wanted to attend, and they sought a preliminary injunction to enter the wedding field immediately.  (ECF No. 1, at ¶ 151; No. 13, at ¶ 154; No. 14; No. 16, at 4 ("The Larsens desire to immediately start promoting the availability of their cinematic, story-telling services for weddings, and to immediately start providing those services.").)  While according to Plaintiffs' Amended Complaint they were allegedly urgently attempting to enter the wedding field four years ago, the procedural history of this case tells a different story.

Plaintiffs have now had over one year to get their wedding business off the ground, but have curiously stalled the execution of their fanciful business and the prosecution of this action.  On remand, Defendants quickly negotiated a preliminary injunction with Plaintiffs.  (ECF Nos. 63 & 64.)[11]  Defendants also timely answered the Amended Complaint.  (ECF No. 66.)  On December 9, 2019, the parties submitted a Rule 26(f) Report.  (ECF No. 72.)  Following those steps, Plaintiffs seemingly disappeared.

Defendants are unaware whether Plaintiffs have attended any wedding fairs that they were allegedly so desperate to attend.  (Kimble Dec. ¶ 9), but it is clear that Plaintiffs have taken few steps to actually pursue this business and have taken almost no steps to seek discovery from Defendants.  Defendants even volunteered to contact the court to

---

[11]  That negotiation saved the Court and the parties the time and expense of briefing and arguing the merits of a preliminary injunction.  It may also have saved the cost and time of an interlocutory appeal.  *See* 28 U.S.C. § 1292(a)(1).

schedule a Rule 16 conference, although this is Plaintiffs' case.  In any event, it is not Defendants' job to prosecute—or advance along—Plaintiffs' case.

*Third*, dismissal on this case on Plaintiffs' proposed terms is improper because Defendants have been forced to expend a significant amount of taxpayer dollars to defend against Plaintiffs' fanciful allegations.   As the record reflects, the parties briefed Defendants' motion to dismiss and Plaintiffs' motion for preliminary injunction.  Plaintiffs lost the motions and appealed.  The parties briefed the appeal and appeared for oral argument.  To date, the Attorney General's Office has spent 887.7 hours on this matter. (Kimble Dec. ¶ 11.)   Based on the hourly rate of each timekeeper, that is more than $114,000.  (Kimble Dec. ¶ 11.)

## III.   IF PLAINTIFFS' MOTION IS GRANTED, THE COURT SHOULD IMPOSE CONDITIONS.

Defendants were amenable to a stipulated dismissal but proposed multiple reasonable terms.  (Kimble Dec. ¶ 4 & Exs. 2-3.)  Plaintiffs rejected the terms without any explanation, except to say the parties were "too far apart."  (Kimble Dec. ¶ 4.)  Defendants do not know which of these terms, if any, are agreeable to Plaintiffs.  (Kimble Dec. ¶ 4.)

If the Court grants Plaintiffs' motion, Defendants request the Court adopt the following conditions:

    a.  The Clerk shall open this case to rule on Plaintiffs' motion;

    b.  This action shall be dismissed with prejudice as to all claims, causes of action, and parties, leaving nothing more to be resolved in this case, with each party bearing their own costs and attorney's fees;

c. The Court shall vacate the preliminary injunction and judgment (ECF Nos. 69 & 70);

d. Plaintiffs will not use or publicize the following statement at any time in the future, absent court order:  "Because of TMG's owners' religious beliefs and expressive purposes, it cannot make films promoting any conception of marriage that contradicts its religious beliefs that marriage is between one man and one woman, including films celebrating same-sex marriages," *see* https://www.telescopemediagroup.net/;

e. Plaintiffs will not re-enter the wedding business in Minnesota for a period of at least five (5) years from the entry of this Order;

f. Plaintiffs will comply with the Minnesota Human Rights Act, with respect to any and all of their Minnesota businesses;

g. Plaintiffs must respond to Defendants' discovery requests, within thirty days of entry of this Order;

h. Plaintiffs must pay Defendants' reasonable attorneys' fees associated with opposing this motion;

i. Alliance Defending Freedom must remove all references to this case from its website, to the extent the references suggest Plaintiffs are seeking to go into the wedding videography business;

j. This Order does not preclude Defendants from seeking to vacate or otherwise modify the Eighth Circuit's opinion in this matter.

These are reasonable and helpful conditions that will remedy the prejudice of Plaintiffs' attempt to avoid litigating the merits of this important case. It will dissuade other parties from concocting manufactured harms to fictional businesses, only to abandon the fantasy (and case) after obtaining a favorable intermediate result. These conditions serve the public interest in having cases, especially important cases such as this one, resolved on the merits.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request the Court deny Plaintiffs' Motion for Voluntary Dismissal with Prejudice. In the alternative, Defendants respectfully request that the Court issue an order as follows:

a. The Clerk shall open this case to rule on Plaintiffs' motion;

b. This action shall be dismissed with prejudice as to all claims, causes of action, and parties, leaving nothing more to be resolved in this case, with each party bearing their own costs and attorney's fees;

c. The Court shall vacate the preliminary injunction and judgment (ECF Nos. 69 & 70);

d. Plaintiffs will not use or publicize the following statement at any time in the future, absent court order: "Because of TMG's owners' religious beliefs and expressive purposes, it cannot make films promoting any conception of marriage that contradicts its religious beliefs that marriage is between one man and one woman, including films celebrating same-sex marriages," *see* https://www.telescopemediagroup.net/;

18

e.  Plaintiffs will not re-enter the wedding business in Minnesota for a period of at least five (5) years from the entry of this Order;

f.  Plaintiffs will comply with the Minnesota Human Rights Act, with respect to any and all of their Minnesota businesses;

g.  Plaintiffs must respond to Defendants' discovery requests, within thirty days of entry of this Order;

h.  Plaintiffs must pay Defendants' reasonable attorneys' fees associated with opposing this motion;

i.  Alliance Defending Freedom must remove all references to this case from its website, to the extent the references suggest Plaintiffs are seeking to go into the wedding videography business;

j.  This Order does not preclude Defendants from seeking to vacate or otherwise modify the Eighth Circuit's opinion in this matter.

Dated:  January 8, 2021          Respectfully submitted,

                                 KEITH ELLISON
                                 Attorney General
                                 State of Minnesota

                                 s/ **Janine Kimble**
                                 _____
                                 JANINE KIMBLE (#0392032)
                                 Assistant Attorney General

                                 445 Minnesota Street, Suite 1400
                                 St. Paul, Minnesota 55101-2131
                                 (651) 757-1415 (Voice)
                                 janine.kimble@ag.state.mn.us

                                 ATTORNEY FOR DEFENDANTS

|#4869793-v2

19