## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TELESCOPE MEDIA GROUP, a Minnesota corporation, CARL LARSEN and ANGEL LARSEN, the founders and owners of TELESCOPE MEDIA GROUP,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>REBECCA LUCERO, in her official capacity as Commissioner of the Minnesota Department of Human Rights, and KEITH ELLISON, in his official capacity as Attorney General of Minnesota,<br><br>                    Defendants. | **Case No.  0:16-cv-04094-JRT-LIB**<br><br><br><br>**Chief Judge John R. Tunheim**<br><br>**Magistrate Judge Leo I. Brisbois** |

**AFFIDAVIT OF CARL LARSEN IN SUPPORT OF PLAINTIFFS'
MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE UNDER
RULE 41(a)(2)**

I, Carl Larsen, declare the following:

1.      I am one of the plaintiffs in this case, am competent to testify, and make this declaration based on my personal knowledge.

2.      Soon after this Court entered the preliminary injunction in this case, I began preparing to enter the wedding film industry.

3.      I adopted a wedding film contract for Telescope Media Group, a true and accurate copy of which is attached as Exhibit A to Plaintiffs' Reply in Support of Their Motion for Voluntary Dismissal Under Rule 41(a)(2).

4.      I revamped the Telescope Media Group website to advertise wedding films alongside our other film services.

5.      I posted on that website the statement identified in paragraph 158 of the Amended Complaint in this case.

6.      Telescope Media Group received more than 10 wedding film inquiries—most of which came in the wedding offseason before government officials began issuing pandemic restrictions.

7.      Before those restrictions, Telescope Media Group created two wedding films consistent with terms in the Amended Complaint.

8.      Clients paid us to create those films.

9.      Once the restrictions hit, Telescope Media Group's film business radically changed. Live-event requests—including wedding requests—slowed to a trickle. For example, I typically travel six months out of the year to film large corporate events. I often film dozens of these events per year, each of which can last about four or five days. After the pandemic struck, Telescope Media Group received zero corporate event requests for nearly five months.

10.     Telescope Media Group still received some wedding film inquires during the pandemic. For example, one couple asked us to create a wedding film in Canada, but we had to decline. To produce that film, we would have had to quarantine for 14 days before traveling to Canada and then quarantine 14 more days on returning home. This burden was too much for us, as it would have limited our ability to perform other work in a tight season.

11.     Because pandemic restrictions routinely change to meet real-time public health needs, Telescope Media Group cannot be sure that scheduled

live events—including weddings—will occur. Depending primarily on live-event requests during this time creates significant business uncertainty.

12.     Telescope Media Group exited the wedding industry last fall. And neither I nor my business have any intent to re-enter that industry.

13.     In fact, Telescope Media Group has pivoted to producing mostly virtual events, and we have considered pursuing other business opportunities, which may mean we would move out of state.

**DECLARATION UNDER PENALTY OF PERJURY**

I, Carl Larsen, a citizen of the United States and a resident of the State of Minnesota, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this _22_ day of January, 2021, at St. Cloud, Minnesota.

Carl Larsen
Telescope Media Group